Miles F. McDonald, J.
Motion pursuant to subdivision 4 of rule 106 of the Buies of Civil Practice, for a dismissal of the complaint on the ground that the same fails to state facts sufficient to constitute a cause of action, denied.
(A) This is an action brought pursuant to section 473 of the Civil Practice Act, for a judgment declaring that the defendant, Francesco Martino, has violated section 3 of the conditions of a certain insurance contract issued by the plaintiff to the defendant Martino, in that the defendant Martino has failed to give the plaintiff notice of an alleged accident in which he was involved ;
(B) That coverage “A’’ of the policy issued by the plaintiff does not cover the claims of the defendants, Anna Priolo and Leo Priolo against said Martino;
(C) That defendants Francesco Martino, Anna Priolo and Leo Priolo, be permanently enjoined from bringing any action against the plaintiff based upon or arising out of the aforesaid accident and upon the plaintiff’s policy of insurance;
(D) That plaintiff have such other and further relief and declarations of the rights and legal limitations of the parties to this action as to the court may seem just and proper.
A determination of the motion requires a construction of article 6-A of the Vehicle and Traffic Law, known as the Motor Vehicle Financial Security Act and particularly sections 93-a and 93-b thereof.
As far as it can be determined by the attorneys for the respective parties and as far as the court is able to ascertain, the matter is one of first impression.
The facts so far as they are material are as follows:
On or about January 30, 1957, plaintiff insurance company, at the request of the defendant Martino issued to him its automobile combination family policy number ACF 32-835-04, effective for a period of one year commencing January 30, 1957 and expiring January 31, 1958. The limits of liability in the said policy were $10,000 for each person, $20,000 for each occurrence The policy contained the following condition:
*937 “ CONDITIONS
3. NOTICE
In the event of an accident, occurrence or loss, written notice containing particulars sufficient to identify the insured and also reasonably obtainable information with respect to the time, place and circumstances thereof, and the names and addresses of the injured and of available witnesses, shall be given by or for the insured to the company or any of its authorized agents as soon as practicable. In the event of theft the insured shall also promptly notify the police. If claim is made or suit is brought against the insured, he shall immediately forward to the company every demand, notice, summons or other process received by him or his representative.”
The requirements of the Motor Vehicle Financial Security Act (Vehicle and Traffic Law, art. 6-A) apply to all motor vehicles registered for the years commencing on and after January 1, 1957 and this policy was issued in contemplation of said act and to permit the defendant Martino to comply therewith.
That on or about February 13, 1957, the defendant Martino, was involved in an automobile accident in which it is alleged that Anna Priolo was injured as a result of the alleged negligence of the defendant Martino. Leo Priolo is the husband of Anna Priolo. The complaint further alleges that although the defendant Martino had knowledge of the accident at the time it occurred, February 13, he failed to give any notice thereof to the plaintiff insurer or any of its agents until on or about the 20th of March, 1957, which delay the plaintiff alleges was unreasonable. Plaintiff insurer therefore disclaimed liability under said policy, said disclaimer being based upon a violation by the defendant Martino to comply with the condition with respect to notice set forth (supra). Both Anna and Leo Priolo make claims of damages against defendant Martino arising out of said accident.
For the purposes of this motion the averments complained of in the complaint are considered to be true although the legal conclusion that the delay on the part of the defendant was unreasonable is not binding upon the court. Neither of the parties to the action, however, raise any factual question with respect to the unreasonableness of the delay in giving notice.
The substance of the arguments of the defendants in support of their motion is as follows: The policy issued by the plaintiff to the defendant Martino having been issued pursuant to a compulsory insurance law — Motor Vehicle Financial Security Act — is an absolute policy and the violation by the insured of *938 the condition contained in said policy is ineffective to absolve the insurer of its obligations under the policy. In support of such argument the defendants contend that subdivision 4 of section 93-a of the Vehicle and Traffic Law, specifically requires that policies issued in conformity therewith be absolute policies. They further contend that even if the Legislature did not so mandate,'that the public policy of the State, as evidenced by various legislative enactments requires that the Financial Security Act be so construed.
On the other hand the plaintiff contends that not only does section 93-a of the Vehicle and Traffic Law not require a policy of absolute liability but that it authorized the Superintendent of Insurance to exclude such provision of absolute liability from the policy and that in view of the positive exclusion in the statute itself, we may not look to the general intent and purpose of the legislative enactment. There can be no doubt of the conditions which prompted the enactment of article 6-A of the Vehicle and Traffic Law or the purpose intended to be accomplished thereby, for the same are set forth in section 93 of said act as follows :
“ (1). This article shall be known and may be cited as the ‘ Motor Vehicle Financial Security Act.’
“ (2). Declaration of purpose. The legislature is concerned over the rising toll of motor vehicle accidents and the suffering and loss thereby inflicted. The legislature determines that it is a matter of grave concern that motorists shall be financially able to respond in damages for their negligent acts, so that innocent victims of motor vehicle accidents may be recompensed for the injury and financial loss inflicted upon them. The legislature finds and declares that the public interest can best be served in satisfying the insurance requirements of this article by private enterprise operating in a competitive market to provide proof of financial security through the methods prescribed herein.
“ Nothing in this article shall be construed to effect any change in the application of article eight of the insurance law to automobile liability insurance rate-making or to effect the development of various methods of doing or operating an automobile liability insurance business.”
For a full understanding of the problem presented it is necessary to consider the previous legislation in this State dealing with more or less the same subject. In 1929, the Legislature enacted what was known as the Motor Vehicle Safety Responsibility Act, same constituting sections 94, 94-a to 94-nn of the Vehicle and Traffic Law. Said sections with some amendments *939 and revisions have remained in force since that date and are still in force. Under such act persons who had proven themselves financially irresponsible by failure to make recompense for injuries caused by their negligence in the operation of a motor vehicle, were deprived of their privilege to operate motor vehicles or to register the same in this State unless they made adequate provision to compensate those whom they had already injured and to provide security against the possibility of future injury to others. The terms of the liability of the insurer under such policy were set forth in paragraph (1) of subdivision (i) of section 94-q as follows:
‘ ‘ The liability of any company under a motor vehicle liability policy shall become absolute whenever loss or damage covered by said policy occurs, and the satisfaction by the insured of a final judgment for such loss or damage shall not be a condition precedent to the right or duty of the carrier to make payment on account of such loss or damage. No such policy shall be cancelled or annulled as respects any loss or damage by any agreement between the carrier and the insured after the said insured has become responsible for such loss or damage, and any such cancellation or annulment shall be void.”
There have been many adjudications construing the enactment and determining the liability of policies issued thereunder and there seems to be no difference of opinion between the attorneys for the respective parties on this point. The policies of insurance issued in compliance with the Motor Vehicle Safety Responsibility Act are absolute in form and a defense that the insured has failed to comply with the conditions set forth in the policy is unavailable to the insurer.
It is quite clear that while policies issued in compliance with section 94-q of the Vehicle and Traffic Law are absolute the same is not true with respect to all liability policies. (Cohen v. Metropolitan Cas. Ins. Co. of N. Y., 233 App. Div. 340; American Lumbermens Mut. Cas. Co. of Illinois v. Trask, 238 App. Div. 668; Hartford Acc. & Ind. Co. v. Breen, 2 A D 2d 271.)
In each of the foregoing cases the absolute liability of the insurance carrier was based upon the statute itself and not as the result of any general legislative intent or public policy.
Only one case Royal Ind. Co. v. Olmstead (193 F. 2d 451) is cited by the moving party in support of their contention that public policy demanded that every policy issued in compliance with a compulsory insurance law must be construed to impose absolute liability as to the insurer at least to the extent of liability required by law. This decision presents many cogent and convincing arguments. However, we may not resort to *940 such a principle of construction enunciated therein if the statute specifically excludes the implication of such intent.
The courts are bound in interpreting the statute to construe it in accordance with the sense of its terms and the intention of the framers of the law. However, that intention is first to be sought from the words employed and if the language is unambiguous, plain and clear, conveying a distinct idea, there is no occasion to resort to other means of interpretation or to go elsewhere in search of conjecture in order to restrict or extend the meaning. (Town of Putnam Val. v. Slutzky, 283 N. Y. 334; New Amsterdam Cas. Co. v. Stecker, 3 N Y 2d 1.) This court is of the opinion that the statute in question here is clear and unequivocal and prevents any such interpretation.
Section 93-b provides as follows: ‘ ‘ Section 93-b. Registration of motor vehicles. 1. No motor vehicle shall be registered in this state unless the application for such registration is. accompanied by proof of financial security which shall b& evidenced by a certificate of insurance or evidence of a financial security bond, a financial security deposit or qualification as a self-insurer under section ninety-three-f; provided that upon renewal of registration with respect to registration years commencing on or after January first, nineteen hundred fifty-eight an application accompanied by a certificate of registration or 'renewal stub in force immediately preceding the date of application for renewal, together with a statement by the applicant certifying that there is in effect proof of financial security, shall meet the requirements of this section. ’ ’
Subdivision 3 of section 93-a. defines the term “proof of financial security ” as follows: “ The term 1 proof of financial security ’ shall mean proof of ability to respond in damages for liability, arising out of the ownership, maintenance or use of a motor vehicle as evidenced by an owner’s policy of liability insurance, a financial security bond, a financial security deposit, or qualification as a self-insurer under section ninety-three-f of this chapter or, in the case of a non-resident, under self-insurance provisions of the laws of the jurisdiction of such non-resident. ’ ’
And subdivision 4 of the same section defines the term “owner’s policy of liability insurance ” as follows: “(a) Affording coverage as defined in the minimum provisions prescribed in a regulation which shall be promulgated by the superintendent at least ninety days prior to the effective date of this act. The superintendent before promulgating such regulations or any amendment thereof, shall consult with all insurers *941 licensed to write automobile liability insurance in this state and shall not prescribe minimum provisions which fail to reflect the provisions of automobile liability insurance policies, other than motor vehicle liability policies as defined in section ninety-four-q of this chapter, issued within this state at the date of such regulation or amendment thereof.”
It is the interpretation of this latter provision which gives rise to the present litigation and this court must determine what was the intention of the Legislature when it stated: ‘1 The superintendent before promulgating such regulations or any amendment thereof, shall consult with all insurers licensed to write automobile liability insurance in this state and shall not prescribe minimum provisions which fail to reflect the provisions of automobile liability insurance policies, other than motor vehicle liability policies as defined in section ninety-four-q of this chapter, issued within this state at the date of such regulation or amendment thereof.” (Italics supplied.)
By its terms the Superintendent of Insurance was directed to make certain that the policies issued in accordance therewith provided coverage equal to that required by section 167 of the Insurance Law. ■ The policy in this case met such standards. The insertion of the clause within the commas, “ other than motor vehicle liability policies as defined in section ninety-four-q of this chapter,” seems to exclude any interpretation that the policy to be issued in pursuance of the section must meet the standards of section 94-q of the Vehicle and Traffic Law. Unless that is its intent there is no purpose in making any reference to this section. The word 11 other ’ ’ cannot be interpreted to mean “included”. If we paraphrase the section to eliminate the double negative, its meaning becomes clear. “ The superintendent * * * shall (not) prescribe minimum provisions which (fail to) reflect the provisions of automobile liability insurance policies, other than motor vehicle liability policies as defined in section ninety-four-q of this chapter, issued within this state at the date of such regulation or amendment thereof.”
By the foregoing the Legislature left it to the Superintendent of Insurance to determine the requirements of the policies to be issued but provided they should not be less than the standard policies then in force and while they did not exclude the possibility that the superintendent might include provisions making the policies absolute they did not require him to do so. The Legislature neither imposed the requirement that the liability policies issued pursuant to the statute be absolute nor did it repeal the statutory recognition of such defense which *942 previously existed. Thus, it appears that the defense of breach of the co-operation clause by the named insured will continue to operate to defeat the rights of the injured plaintiff.
It is regretted that the legislative debates or other legislative documents which preceded the enactment of the section are not available. Both counsel advised the court that as far as they have been able to ascertain the same are not available.
Subsequent to the enactment of the section and more than 90 days prior to the effective date of the act the Superintendent of Insurance in compliance therewith, issued the regulations required pursuant to such section. The same are referred to as ‘ ‘ Regulation 35 Minimum provisions for Automobile Liability Insurance Policies.” Such regulations contain the following:
“ 3. Such an ‘ owner’s policy of liability insurance ’ may also contain in substance the following provisions:
“ (a) That written notice of accident, claim or suit is required.
“ (b) That the insurer is subrogated to any rights of recovery of the insured.
“ (c) That the terms of the policy may not be waived or changed except as stated in the policy.
“ (d) That the insurer’s consent is necessary to any assignment of interest under the policy.
“ (e) That the insured will cooperate with the insurer.
“ (f) Thai no action shall lie against the insurer unless the insured shall have complied with all the terms of the policy, nor until the amount of the insured’s obligation to pay shall have been finally determined either by judgment against the insured after actual trial or by written agreement of the insured, the claimant and the insurer.
“ (g) That the insurer issues the policy upon the reliance of the insured’s declarations and that the policy embodies all agreements between the insured and the insurer and any of its agents relating to the insurance.
“ (h) A provision relating to the insurer’s own method of doing business.” (Italics supplied.)
The portion underscored indicates the superintendent’s intent not to require policies of absolute liability.
In a letter addressed to the moving party dated January 7, 1958, and submitted on the argument of this motion, counsel to the superintendent stated as follows: ‘ ‘ The Superintendent of Insurance has taken the position that subdivision 4 of Section 93-a specifically prohibits him from taking into consideration *943 the absolute liability provisions contained in Section 94-q. As a result, the Superintendent in promulgating his regulations with respect to the type of policy acceptable for the purposes of the new law has not required any absolute liability features.”
Since the promulgation of regulation 35 which is dated July 17, 1956, the Legislature has met in two plenary sessions and they must be deemed to have been aware of the interpretations which the Superintendent of Insurance placed upon their act in 1956. If it had been the Legislature’s opinion that the act of the superintendent was contrary to their express intent and purpose action certainly would have been taken to clarify the provisions of section 93 so as to conform to their intent; this they failed to do. The enactment of article 6-A was only secured after years of struggle in the Legislature and strenuous opposition from those engaged in the insurance field. The most serious consideration was given to the proposed law and to each and everyone of its terms. In the view of one who is daily confronted with the hardships resulting from accidents perpetrated by financially irresponsible defendants, the provision for absolute liability in compulsory insurance would seem to be both salutary and advisable. However, it is not within the province of the court to rewrite the enactments of the Legislature or to distort their obvious intent.
This court has but recently commented upon the failure of counsel to furnish adequate memoranda upon the argument of their motions. Such was not the case here. Both counsel submitted memoranda of law which showed intelligent and exhaustive research and provided the court with every available authority to assist it in its determination, even to the extent of providing the court with cases and documents which were inimical to their contentions. Their conduct is most refreshing and the court compliments them therefor.