EDITH COOPER et al., Appellants, *v.* COMMERCIAL INSURANCE COMPANY, Respondent.

Fourth Department, June 30, 1961.

*Yanowitch & Frank* (*Bernard A. Frank* of counsel), for appellants.

*Reilly, McLouth, Lines & Wilkens* (*Stephen V. Lines* with him on the brief, *Nicholas R. Santoro* of counsel), for respondent.

*Per Curiam.* This appeal involves the construction of a nonowner automobile liability policy issued by the defendant insurance company to the plaintiff Wyatt as proof of financial responsibility to comply with the provisions of the Motor Vehicle Safety Responsibility Act (former Vehicle and Traffic Law, art. 6-A, subsequently renum. art. 6-B by L. 1956, ch. 655, now Vehicle and Traffic Law, art. 7). Wyatt resided with his mother who owned an automobile which was insured by another insurance company. While Wyatt was driving his mother's automobile, an accident occurred, as a result of which the plaintiff Cooper was injured. A judgment in the amount of $22,466.90 was rendered in favor of the plaintiff Cooper against both the owner and the operator. The owner's insurance company paid to the extent of its limits, but the operator's carrier, the defendant, had disclaimed liability and refused to defend and it refused to pay any part of the judgment. This action is for a declaratory judgment to determine the defendant's liability.

The policy issued to the operator was in a nonowner form and contained a provision that the insurance did not apply " to any automobile owned by the Named Insured or a member of the same household". It is this exclusion upon which the defendant relies. However, the statute (former Vehicle and Traffic Law, § 94-q, subd. [c], now Vehicle and Traffic Law, § 345, subd. [c]) provided that an operator's policy of liability insurance issued in compliance with the statute must cover the operator for all damages " arising out of the use by him of any motor vehicle not owned by him ". Wyatt was required to procure the insurance as a condition of his obtaining an operator's license. The defendant filed a certificate pursuant to the statute that it had issued to Wyatt a policy in compliance with the statute. The policy specifically provided that " When this policy is certified as proof of financial responsibility under the

provisions of the motor vehicle financial responsibility law of any state or province, such insurance as is afforded by this policy * * * shall comply with the provisions of such law ". The statute (§ 94-q, subd. [i], par. [2] of the former Vehicle and Traffic Law, now § 345, subd. [i], par. [2] of the Vehicle and Traffic Law) provided that " The policy * * * shall not conflict with the provisions of this article ".

The provision in the policy excluding coverage of any automobile owned by " a member of the same household " was in conflict with the statute and therefore was void and ineffective. Under the terms of the statute and under the terms of the policy itself, the policy must be deemed to have been rewritten so as to limit the exclusion to that permitted by the statute, namely, the exclusion only of motor vehicles owned by the named insured himself. " Inasmuch as the [policy] * * * was given pursuant to this statute, the statutory text is to be read into the instrument." (*Graybar Elec. Co.* v. *New Amsterdam Cas. Co.*, 292 N. Y. 246, 251; see, also, *Green Bus Lines* v. *Ocean Acc. & Guar. Corp.*, 287 N. Y. 309; *McNamara* v. *Allstate Ins. Co.*, 3 A D 2d 295; *Western New York Med. Plan* v. *Wikler*, 8 A D 2d 988; *New York Life Ins. Co.* v. *Truesdale*, 79 F. 2d 481; see, also, Insurance Law, §§ 143, 167.) Wyatt's operation of his mother's car was therefore covered by the policy.

The decisions in other jurisdictions are in accord with this conclusion (*Indiana Lumbermens Mut. Ins. Co.* v. *Parton*, 147 F. Supp. 887; *Bonfils* v. *Pacific Auto Ins. Co.*, 165 Cal. App. 2d 152; *Milwaukee Ins. Co.* v. *Morrill*, 100 N. H. 239; cf. *Polonitz* v. *Wasilindra*, 155 Pa. Superior Ct. 62).

The defendant does not question the soundness and applicability of the authorities cited above, but it argues that under another provision of the statute it was free to insert in the policy any exclusion which it pleased, going beyond the exclusions permitted by statute. The statutory provision upon which the defendant relies is subdivision (f) of section 94-q of the former Vehicle and Traffic Law (now subd. [f] of § 345 of the Vehicle and Traffic Law), which reads as follows: " Such motor vehicle liability policy may, however, grant any lawful coverage in excess of or in addition to the coverage herein specified and such excess or additional coverage shall not be subject to the provisions of this article." The defendant argues that, since the automobile which Wyatt was driving was insured, the policy issued to Wyatt constituted " excess or additional coverage " within the meaning of this provision, and that therefore the policy was not " subject to the provisions of this article ". The Special Term accepted this argument and accordingly

granted summary judgment in favor of the defendant. This was, in our opinion, erroneous.

The quoted provision has no bearing upon this case. It refers to coverage "in excess of or in addition to the coverage herein specified", that is, coverage going beyond, or in addition to, the minimum statutory coverage in a safety responsibility policy. Thus, for example, an insurance company writing a required safety responsibility policy may provide in the policy, pursuant to a voluntary agreement with the insured for an additional premium, that the named insured shall be covered in a sum in excess of the $10,000 to $20,000 statutory minimum (§ 94-1 of the former Vehicle and Traffic Law, now § 341 of the Vehicle and Traffic Law and § 94-q, subd. [b], par. [3] of the former Vehicle and Traffic Law, now § 345, subd. [b], par. [3] of the Vehicle and Traffic Law) and as to the excess or additional coverage the insurance company is free to impose any conditions or exclusions which it chooses. However, as to the statutory minimum, under the sections cited above, the insurance company may not impose any conditions or exclusions which are in conflict with the statutory provisions. The policy in the present case was written for the statutory minimum amounts which Wyatt was required to carry; no question of additional or excess coverage within the meaning of the quoted provision is involved in this case. (See § 94-q, subd. [i], par. [1] of the former Vehicle and Traffic Law, now § 345, subd. [i], par. [1] of the Vehicle and Traffic Law, for a similar distinction drawn in the statute between the statutory minimum coverage and excess coverage voluntarily provided in the policy, in connection with the availability of certain defenses.)

The defendant's construction of the statute would lead to unreasonable results. It would mean that whenever an operator covered by a nonowner's safety responsibility policy happened to drive a car which was covered by an owner's policy of insurance, the operator's policy would cease to be, for the time being, a statutory policy and would be subject to any conditions or exclusions which the insurance company had seen fit to write into it, but whenever the operator drove an uninsured automobile his policy would revert to the statutory form, with all conflicting provisions written out of it.

We reach the conclusion that the contention advanced by the insurance company, which prevailed at Special Term, should be rejected, and that the decision of Special Term should be reversed.

However, there is a problem in the case, not raised by the defendant, which requires further discussion. The policy was

issued by the insurance company on December 27, 1956, and was written for a term of one year, expiring on December 27, 1957. The accident which gave rise to the present litigation occurred on December 17, 1957, within the initial term of the policy. However, prior to that date, the Safety Responsibility Act had been amended by the Legislature, by adding a new section 94-r to the old Vehicle and Traffic Law (L. 1957, ch. 706, eff. April 19, 1957, now § 346 of the Vehicle and Traffic Law), reading as follows: '' Notwithstanding any other provision of law, no person, on or after February first, nineteen hundred fifty-seven, shall be required to file or maintain proof of financial responsibility pursuant to this article.'' The adoption of the amendment had been recommended by the Motor Vehicle Bureau upon the ground that the new Financial Security Act, commonly known as the Compulsory Insurance Law (art. 6, §§ 310–321 of the Vehicle and Traffic Law), provided adequate protection for the public and that, while the penal and disciplinary provisions of the Safety Responsibility Act should be continued in force, there was no longer any need to require the carrying of insurance policies under that act. (N. Y. Legis. Annual [1957], pp. 334–335.) The soundness of the reasoning advanced by the bureau may well be questioned, in view of the marked differences between the defenses available under policies issued pursuant to the Safety Responsibility Act and those available under policies issued pursuant to the new Financial Security Act. (*Teeter* v. *Allstate Ins. Co.,* 9 A D 2d 176, 183–184, affd. 9 N Y 2d 655; *National Grange Mut. Liab. Co.* v. *Fino,* 13 A D 2d 10; *General Acc., Fire & Life Assur. Corp.* v. *Martino,* 12 Misc 2d 935.) It is noteworthy that when the Financial Security Act was adopted (L. 1956, ch. 655, eff. Feb. 1, 1957) it was specifically provided in the session law (§ 6) that the new act should not be construed so as '' to nullify or render ineffective '' the provisions of the Safety Responsibility Act. But the fact remains that the Legislature accepted the recommendation of the Motor Vehicle Bureau and adopted the recommended amendment.

By reason of the amendment, Wyatt was no longer required, at the time of the accident, to carry an insurance policy under the Safety Responsibility Act. But the policy was in fact outstanding, the premium having been paid by Wyatt for the full policy term. The question then arises whether the termination of Wyatt's obligation to carry the policy has any effect upon the construction of the policy. In our opinion, it has not. The policy was issued in accordance with the statute at a time when Wyatt was required to obtain a policy in conformity with the statute, and Wyatt paid a premium for a statutory policy and received one. Any subsequent change in Wyatt's statutory

obligation to carry such a policy could not affect the terms of the outstanding policy, so long as it remained in effect. "The obligation of a contract is determined by the law in force when it is made". (*Guaranty Trust Co. of N. Y.* v. *New York & Queens County Ry. Co.*, 254 N. Y. 126, 127.) While the terms of the policy were mandated by statute, the rights thereunder were nevertheless contractual in nature (Lenhoff, Optional Terms and Required Terms in the Law of Contracts, 45 Mich. L. Rev. 39, 62). The case of *New York Life Ins. Co.* v. *Truesdale* (79 F. 2d 481, *supra*) is directly in point. It was there held that the incontestability clause in a life insurance policy should be enforced as rewritten by force of the statute in effect at the time the policy was issued, even though the statute had been subsequently amended. The policy in this case having been rewritten by force of the statute at the time of its issuance so as to limit the exclusion clause to the exclusion of coverage of automobiles owned by the named insured, the policy continued to be enforcible in the rewritten terms, regardless of the subsequent change in the statute.

The subsequent change in the statute cannot properly be given retroactive effect so as to allow a new rewriting of the provisions of the outstanding policy. To give the statute such retroactive effect would constitute an impairment of Wyatt's contractual rights, in violation of the State and Federal Constitutions. (*New York Life Ins. Co.* v. *Truesdale, supra*; *Worthen Co.* v. *Kavanaugh*, 295 U. S. 56; *Weiler* v. *Dry Dock Sav. Inst.*, 258 App. Div. 581, affd. 284 N. Y. 630.)

The judgment appealed from should be reversed and the defendant's motion for summary judgment should be denied and plaintiffs' motion for summary judgment should be granted.

All concur. Present — WILLIAMS, P. J., BASTOW, HALPERN, McCLUSKY and HENRY, JJ.

Judgment unanimously reversed, with costs, and defendant's motion denied and plaintiffs' motion for summary judgment granted, with $10 costs.