OPINION OF THE COURT
Herbert Kramer, J.
This court holds that the City Board of Elections has been statutorily mandated [1] to take further immediate action toward total accessibility of polling sites for the physically disabled voters. The court further holds that the Board’s actions to date are violative of the current statute.
*223 FACTS
A movement to provide accessibility in voting for physically disabled voters, culminated with the passage in 1978 of what is now Election Law § 4-104 (1-a). Since 1978 the New York State Legislature has successively amended and strengthened [2] the Election Law in an attempt to make polling sites totally accessible to disabled voters.
The Department of General Services at the request of the City Board of Elections conducted a survey in 1985 of all polling sites. They found that 918 out of 1,337 polling sites in the City of New York (68.7%) are currently inaccessible. Some 20% (184) located in public schools can be made accessible at no cost to the Board. Additional polling sites can be made accessible at no cost by opening alternative entrances. Many of the remaining inaccessible polling sites can be made accessible by using a small percentage of the annual Board of Elections budget. Subsequent to this survey, the City Board of Elections continued relocating polling places to inaccessible sites.
The plaintiffs’ claim that despite the statute, movement of polling sites has not been done in accord with and in consideration of the statutory mandate and no site has been chosen for the specific purpose of accessibility.
The City Board of Elections has not specified in writing as to each polling site why it cannot comply with the statute. Further, there is no indication by the Board of compliance with the waiver and written determination provisions of the statute.
CONTENTIONS
The City contends in response to plaintiffs’ claim of failure to conform to the statutory mandate that the legislative history, rather than the statute, allows for full complaince by *224 the Board of Elections in 1990.[3] The City Board claims that it is committed to achieving total accessibility of polling sites and can accomplish same by 1990. Furthermore, subsequent to the 1985 survey, the City Board placed ramps in an additional 143 sites, making 43% of all sites accessible. The City Board states that it is ready to work with disabled individuals and organizations to achieve total accessibility of all sites by 1990.
Plaintiffs contend that the State Board has failed to issue required regulations subsequent to the 1984 amendment of the statute. Additionally, plaintiffs allege that the State did not compel the City Board of Elections to comply with the statute. The State Board indicates it has complied and in October 1985 issued a report of polling place accessibility pursuant to Election Law § 4-104 (1-a).
STATUTORY CONSTRUCTION
While there are factual issues to be determined, the City’s defense of the lack of statutory immediacy requires a preliminary determination.
When a statute is not plain on its face, the construction of the statute requires a determination of legislative intent (Minichiello v Royal Business Funds, 47 Misc 2d 310, affd 25 AD2d 502, revd on other grounds 18 NY2d 521 [1966]). Thus, we must ascertain the intent, the spirit and the purpose of the law and the objects to be accomplished by passage of a particular statute (Metropolitan Life Ins. Co. v Durkin, 276 App Div 394, affd 301 NY 376 [1950]; Matter of Guardian Life Ins. Co. of Am. v Chapman, 302 NY 226 [1951]).
The public policy which the Legislature had in mind in enacting the statute must also be considered in construing the statute (Matter of Cherkis v Impellitteri, 307 NY 132 [1954]).
The intent of the Legislature in enacting Election Law § 4-104 and its subsequent amendments can be found in the literal or plain reading of the act itself. The language used in the statute states in unambiguous terms that the Legislature intended that all polling sites be made accessible to the disabled voters as of the effective date of the statute (Rankin v Shanker, 23 NY2d 111 [1968]; General Acc. Fire & Life Assur. *225 Corp. v Martino, 12 Misc 2d 935 [1958]; Matter of New York Ambassador v Board of Stds. & Appeals of City of N. Y., 114 NYS2d 901, revd on other grounds 281 App Div 342, affd 305 NY 791 [1953]; Drelich v Kenlyn Homes, 86 AD2d 648 [1982]; Patrolmen’s Benevolent Assn. of City of N. Y. v City of New York, 41 NY2d 205).
Further, this court holds that the City Board of Elections has failed to take the steps necessary to insure full object compliance by 1990. Stated differently, this court holds that the statute requires either immediate accessibility or compliance with the waiver or written determination procedure until 1990 when the waiver procedure will no longer be available.
Additionally, the waiver provision is not applicable to the extent currently utilized by the City Board of Elections albeit even that in an improper fashion. Thus, the Legislature has prohibited the current use of a nonaccessible site which can be made immediately and reasonably accessible.
REMEDIES
All the named individual plaintiffs representing the class of physically disabled are wheelchair-impaired disabled. It is conceivable that the interests of the wheelchair impaired and nonwheelchair infirm may be different. This court, in the interest of justice, is allowing representatives of that group, including Legal Service for the Elderly, to intervene in the within action. The specific conflict envisioned is a polling site which is accessible to the wheelchair bound by virtue of location, but not to the wheelchair bound by virtue of barriers.
This court further directs that the City Board is enjoined from promulgating the list of polling sites pursuant to Election Law § 4-104 until full and current compliance with the statute waiver provisions.
The Board of Elections shall file quarterly reports with the court, reviewing inspections of polling sites and requests for waivers and written determinations thereupon.
This court shall retain jurisdiction pending complete statutory compliance.
The City Board of Elections is enjoined from relocating polling sites to nonaccessible sites without prior written permission of the court and after a statutory fair hearing by the Board of Elections. The parties may request a hearing at any time by letter notice.
*226 The City Board of Elections shall hold a statutory fair hearing on any other issue in controversy, subject to this court’s review.

. "§ 4-104 * * * 1. Every city or town legislative body except the city council of the city of New York, shall submit to the board of elections, a list of the polling places in each election district * * * Such list must be submitted by May first, of each year, and shall be effective to designate such meeting places for one year thereafter * * * in the city of New York, the board of elections shall designate such polling places * * *
"1-a. [Eff Dec. 1,1984.] Each polling place shall have at least one entrance that provides access, by ramp or otherwise, to physically disabled voters; provided, however, that this requirement may be waived in writing by the county board of elections upon a petition * * * showing good and sufficient cause. In the city of New York * * * the board shall specify in writing why it has determined that it is unable to comply with the provisions of this subdivision. Such petition, waiver, and written determination * * * shall be filed in the office of the board and be available for public inspection. Such a waiver may be granted and filed or such a written determination may be filed only where the board of elections determines, with regard to each specific polling place for which a waiver is sought or a written determination is to be filed, (1) that an alternative accessible polling place is not reasonably available and that specific efforts were undertaken * * * to locate such an alternative accessible polling place * * * (2) that compliance with the polling place accessibility requirements of this subdivision would require that unreasonable expenses be incurred and paid * * * (3) that substantial efforts will be undertaken in cooperation with persons with disabilities who have contacted the legislative body * * * that the specific substantial efforts to be undertaken to achieve compliance are listed in the petition or written determination * * * A request for a waiver shall be filed at the same time that the list of polling places is submitted to or established by the board of elections. The board of elections shall forthwith prepare a list of all election districts for which a waiver is sought or a written determination filed. Such list together with all such petitions for waiver and written determinations shall be public records at the office of the board of elections. Not later than May seventh of each year, the board of elections shall mail a copy of said list by first class mail to every person who has made a written request for such list within the two preceding calendar years. The board of elections shall either grant or deny the waiver no later than June first of the year in which the request is made. The state board of elections shall promulgate regulations necessary to ensure proper execution of the provisions of this subdivision.”

. "Legislative Intent. The legislature hereby finds that waivers to the polling place accessibility requirements of the election law have been granted with such frequency and facility that both the letter and spirit of such requirements have been increasingly frustrated. By construing more strictly the conditions under which waivers may be granted, this measure [amending this section] will effect an immediate improvement in the number of accessible polling places in this state.” (L 1984, ch 526, § 1.)

. "Legislative Intent * * * Moreover, while recognizing that there are certain, limited circumstances in which total accessibility may be achieved only over a period of several years, this measure will be a significant step in helping to assure the accessibility of all polling places by nineteen hundred ninety.” (L 1984, ch 526, § 1 [eff Dec. 1, 1984].)