NANCY GOLDFARB, Respondent, v RONALD GOLDFARB, Appellant.

Second Department, May 17, 1982

APPEARANCES OF COUNSEL

*Ronald Goldfarb,* appellant *pro se.*

*Eisenberg, Margolis & Gottfried (Gerald Eisenberg* of counsel), for respondent.

OPINION OF THE COURT

MANGANO, J.

On this appeal, we are asked to examine the effect of current section 5-311 of the General Obligations Law on separation agreements executed before its enactment, i.e., under the former section which was found unconstitutional for impermissibly prohibiting the waiver of spousal support by wives, but not husbands.

The parties executed a separation agreement on October 16, 1979. In paragraph 3, it provided for a limitation on the husband's liability to support his wife, viz., that the total amount of support would be $7,000, payable within seven years. At the time the agreement was executed, former section 5-311 of the General Obligations Law (L 1963, ch 576, § 1, as amd by L 1966, ch 254, § 12; repealed by L 1980, ch 281, § 19) was in effect. Essentially, that section prohibited spouses from contracting to relieve a husband from his liability to support his wife. This, of course, is exactly what the parties did in this case. By limiting the total amount of support to be paid to the wife, they relieved the husband of his support liability upon performance of his contract obligation.

The instant action was commenced on or about October 23, 1980. The first cause of action seeks rescission of the separation agreement as violative of former section 5-311 of the General Obligations Law, which had been previously repealed — the current section being in effect at the commencement of this action (L 1980, ch 281, §§ 19, 47). The new law abrogates the gender-based distinction in the predecessor statute that only prohibited spouses from contracting to relieve a husband's liability to support his wife — a distinction found unconstitutional by this court in *Greschler v Greschler* (71 AD2d 322, mod on other grounds 51 NY2d 368). On the premise that either spouse has the obligation to support the other on a needs basis (see *Orr v Orr*, 440 US 268), the current section 5-311 provides that either "may waive his or her right to support as long as he or she is not likely to become a public charge." (*Greschler v Greschler*, 51 NY2d 368, 378, *supra*.)

The issue now before us is whether the support provisions of the parties' separation agreement are invalid as violative of applicable law. In deciding this issue, a threshold determination must be made, i.e., what law is to be applied in construing the agreement — the former section 5-311 of the General Obligations Law, the law on the date of the agreement's execution, or the current section, the law on the date that this action was commenced? We hold that the current section is the applicable law, and that,

consequently, the support provisions of the separation agreement are valid and enforceable.

"It is well settled that contracts made by private parties must necessarily be construed in the light of the applicable law at the time of their execution." (10 NY Jur, Contracts, § 204, p 112; see *City of Troy Unit of Rensselaer County Ch. of Civ. Serv. Employees Assn. v City of Troy,* 36 AD2d 145, 147, affd 30 NY2d 549; *Cooper v Commercial Ins. Co.,* 14 AD2d 55, 57, affd 11 NY2d 818; *Taylor v Muss,* 13 AD2d 245, 247-248, affd 11 NY2d 685; *Kinney v Kinney,* 48 AD2d 1002.) Generally, therefore, the validity of a contract will depend upon the law as it existed at the time it was made. Nevertheless, a contract "may be affected by subsequent legislation in the exercise of the police power, or by a subsequent statute announcing a new public policy * * * or by repeal of a prohibitory act." (10 NY Jur, Contracts, § 129, pp 23-24; see *Matter of Di Giacomo v City of New York,* 58 AD2d 347, revd on other grounds 46 NY2d 894; see, also, Illegal Contract Becoming Legal, Ann., 126 ALR 685.)[1]

Where there has been a repeal of a prohibitory statute, which had rendered invalid a contract violative of its provisions, such a repeal will render the contract valid and enforceable and not subject to the defense of illegality. (See *Curtis v Leavitt,* 15 NY 9, 152-154; see, also, *Bloch v Frankfort Distillery,* 247 App Div 864, affd 273 NY 469; *Farber v Aquino Sons,* 253 App Div 600, 601.) This principle, however, applies only to those acts of the Legislature which are strictly measures of public policy, not to those which are intended primarily to establish or affect the rights of parties as to each other. (*Central Bank v Empire Stone Dressing Co.,* 26 Barb 23, 26.)[2]

---

**1.** This was not always the rule in New York. In the early case of *Bailey v Mogg* (4 Denio 60, 62), it was held that where an agreement is entered into in violation of a statutory provision, the subsequent repeal of such provision, even though it effects a change in public policy, will not render the agreement valid.

**2.** It should be noted that *Toll v Friedman* (272 App Div 587) is not to the contrary. In that case, enforcement was sought of certain contracts executed during World War II in violation of mandatory price control regulations. It was argued that those contracts, though illegal at the time of execution, became valid once price controls had been lifted after the war. Without contravening the rule that the repeal of a law effecting a change of public policy will validate a once illegal contract, these wartime contracts were held

With reference to the case at bar, we note that former section 5-311 of the General Obligations Law was repealed, and the current section adopted, as part of a major legislative enactment that amended, *inter alia,* the spousal and child support provisions of the Domestic Relations Law and the Family Court Act. These statutes were rendered gender-neutral in their control of the financial rights and obligations incident to family life and its dissolution. (L 1980, ch 281.) As a result, they represent "the most sweeping reform of the divorce laws in this State since the Divorce Reform Act of 1966." (Governor's Message Approving L 1980, ch 281, McKinney's Session Laws of NY, 1980, p 1863.) Such statutes place the burden of child or spouse support on parents or spouses in accordance with their respective financial abilities and other constitutionally permitted factors, and abandon impermissible sex-based distinctions as contained in the former law. (Recommendation of the Law Rev Comm, McKinney's Session Laws of NY, 1980, p 1614.) It cannot be disputed, therefore, that the 1980 enactment of a new section 5-311 of the General Obligations Law, as part of this statutory overhaul of the family law of New York (see Scheinkman, 1981 Practice Commentary, McKinney's Cons Laws of NY, Book 14, Domestic Relations Law, § 236, 1981-1982 Pocket Part, p 33), represents a change in the public policy of this State. Consequently, even though the parties, by including in their separation agreement a partial waiver of the husband's wife support obligation, violated former section 5-311, those provisions were rendered valid and enforceable and not subject to a claim of illegality, when the statute prohibiting such a waiver was repealed by acts of the Legislature constituting measures of public policy. (*Curtis v Leavitt,* 15 NY 9, *supra.*) Wherefore, plaintiff's first cause of action for rescission of the parties' separation agreement, premised solely on the ground that the support provisions of the parties' separation agreement are violative of former section 5-311 of the General Obligations

unenforceable. The lifting of price controls did not involve a change in public policy concerning the wisdom of such emergency measures or the absolute necessity for strict and universal compliance. It was simply that peace no longer demanded all that was required by war. And, in peace, those who had ignored the requirements of war, would find no reward.

Law, should be dismissed. As a result, we hold that, by reason of a retroactive application of current section 5-311, defendant is insulated from plaintiff's claim that said provisions are illegal. In doing so, however, we recognize a need for further clarification on the issue of the retroactive application of the present statute.

In cases involving the enforceability of separation agreements, the retroactive application of current section 5-311 may, as here, be used as a *shield* against a claim of illegality based solely on the former law. Nevertheless, it may not be used as a *sword* in seeking to invalidate agreements, on constitutional grounds, as not having been executed in reliance on the gender-neutral standards incorporated in the new law and public policy of this State. The issues of the constitutionality of former section 5-311 of the General Obligations Law and the validity of separation agreements concluded thereunder were considered by this court in *Greschler v Greschler* (71 AD2d 322, mod on other grounds 51 NY2d 368, *supra*). We held that former section 5-311 was unconstitutional insofar as it prohibited spouses from contracting to relieve husbands of their liability to support their wives, but not from contracting to relieve wives of their liability to support their husbands, unless the latter were, or were likely to become, public charges (71 AD2d 322, 323, *supra*). In *Kember v Kember* (77 AD2d 646), the issue was raised as to the retroactive applicability of *Greschler*. We held that it could be applied retroactively, but only to actions pending, including those in the appellate process, at the time we handed down that decision. Since *Kember,* by severely limiting the retroactive application of *Greschler,* has almost foreclosed any challenge to the validity of separation agreements based on the unconstitutionality of former section 5-311, agreements executed before *Greschler,* and, therefore, under the former law, cannot now be challenged as products of an unconstitutional statutory scheme that included gender-based distinctions cleansed from the present law. To that extent, the current statute cannot be applied retroactively to support such a constitutional challenge on the ground that it represents the law and policy that should have

governed the rights of parties to a separation agreement concluded prior to the repeal of former section 5-311.

We have examined defendant's other contentions and have found them to be academic or without merit.

Accordingly, defendant's motion for partial summary judgment should be granted to the extent that plaintiff's first cause of action should be dismissed.

LAZER, J. P., BROWN and NIEHOFF, JJ., concur.

Order of the Supreme Court, Richmond County, dated September 14, 1981, modified, on the law, by deleting the words "in its entirety" and adding thereto, after the word "denied", the following: "except the motion is granted to the extent of dismissing plaintiff's first cause of action." As so modified, order affirmed, without costs or disbursements.