**In the Matter of the Arbitration between Marco BARBIER, Silvana Barbier, and Stephania Barbier, Petitioners,**

**and**

**SHEARSON LEHMAN HUTTON, INC., Successor-in-Interest to Shearson Lehman Brothers, Inc., and Roger Bendelac, Respondents.**

**No. 90 Civ. 4023 (RJW).**

United States District Court, S.D. New York.

Dec. 3, 1990.

Kornstein Veisz & Wexler, New York City, for petitioners; Daniel J. Kornstein, Wayne O. Alpern, of counsel.

Shanley & Fisher, P.C., New York City, for respondent Shearson Lehman Hutton, Inc.; Matthew Farley, of counsel.

Thomas J. Hanrahan, New York City, for respondent Roger Bendelac.

## OPINION

ROBERT J. WARD, District Judge.

Marco Barbier, Silvana Barbier and Stefania Barbier (collectively, "the Barbiers") have petitioned this Court, pursuant to section 9 of the Federal Arbitration Act (the "Act," or the "FAA"), 9 U.S.C. § 9, to confirm an arbitration award entered by a New York Stock Exchange arbitration panel on May 18, 1990. Respondent Roger Bendelac ("Bendelac") has moved to vacate the arbitration award in its entirety. Respondent Shearson Lehman Hutton, Inc. ("Shearson") has moved to vacate the punitive damages component of the award against it. For the reasons that follow, the Barbiers' petition to confirm the arbitration award is granted, and the motions to vacate the award are denied.

## BACKGROUND

The relevant facts are not disputed. On or about January 7, 1986, the Barbiers entered into a written agreement with Shearson (the "Agreement") by which they opened an account for the purchase and sale of securities.[1] In performance of the Agreement, Shearson directed its employee, Respondent Bendelac, to service the Barbiers' account as their broker.

The Agreement contained an arbitration provision which stated, in pertinent part:

> This agreement shall ... be governed by the laws of the State of New York. Unless unenforceable due to federal or state law, any controversy arising out of or relating to [the Barbiers'] accounts, to transactions with [Shearson, its] officers, directors, agents and/or employees for [the Barbiers] or to this agreement or the breach thereof, shall be settled by arbitration in accordance with the rules then in effect of the National Association of Securities Dealers, Inc. or the Boards of Directors of the New York Stock Exchange, Inc. as [the Barbiers] may elect.... Judgement upon any award rendered by the arbitrators may be entered in any court having jurisdiction thereof.

Agreement at ¶ 13.

On or about October 19, 1988, a dispute arose between the parties in which the Barbiers claimed that Bendelac and Shearson had forged certain agreements and then engaged in discretionary commodities trading on their account without their knowledge or authorization, resulting in the loss of their investment. Respondents maintained that the Barbiers had executed the agreements and had authorized the discretionary trading.

In accordance with the arbitration clause of the Agreement the parties, without ob-

---

1. A complete copy of the Agreement is annexed as Exhibit A to the Petition to Confirm Arbitration Award, which is itself annexed to the Notice of Petition to Confirm Arbitration Award, filed June 13, 1990.

jection, submitted their dispute to arbitration before a New York Stock Exchange ("NYSE") arbitration panel. On or about August 20, 1989, the Barbiers filed an Amended Statement of Claims with the NYSE, in which they asserted claims for conversion, breach of fiduciary duty, breach of contract, negligence and/or recklessness, and assault.[2] They demanded an award of, *inter alia*, punitive damages. Respondents denied liability and raised a number of affirmative defenses and counterclaims.[3]

The arbitration panel conducted several days of hearings, during which the parties appeared and submitted evidence on the issues presented. On May 18, 1990, the arbitrators filed their unanimous award. Their decision stated:

> The undersigned arbitrators have decided and determined in full and final settlement of all claims between the parties that:
>
> Claimants are awarded the total sum of $155,645.00, which amount includes: Loss of principle [sic], interest at 9% from 2/1/87, attorney fees and punitive damages in the amount of $25,000. Shearson Lehman Brothers Inc. will be assessed $31,129.00 of the total award. Roger Bendelac will be assessed $124,516 of the total award. Costs of arbitration shall be borne by Shearson 20% ($2,400) and Roger Bendelac 80% ($9,600) to be paid to the New York Stock Exchange.

On or about June 12, 1990, the Barbiers filed the instant petition to confirm the arbitration award. Bendelac now moves to vacate the award in its entirety. He argues that the arbitrators exceeded and/or imperfectly executed their powers by (1) awarding punitive damages, and (2) failing to render an award on all issues submitted. Shearson, challenging only that portion of the award which granted punitive damages

to petitioners, contends that the arbitrators' award of punitive damages is proscribed. Petitioners maintain that the award was in all respects proper and should be confirmed.

## DISCUSSION

### I. *The Applicable Law.*

The threshold issue for the Court is whether federal, or New York, arbitration law applies in the instant case. Respondents maintain, for a variety of reasons, that the New York state law of arbitration must be applied. The issue assumes primary importance in the instant case because, under New York law, "an arbitrator's award which imposes punitive damages, even though agreed upon by the parties, should be vacated" as contrary to public policy. *Garrity v. Lyle Stuart, Inc.*, 386 N.Y.S.2d 831, 833, 40 N.Y.2d 354, 353 N.E.2d 793, 795 (1976).

Bendelac asserts that the Federal Arbitration Act does not apply at all in the instant case. He argues, somewhat confusingly, that the Act is not "trigger[ed]" because this Court's jurisdiction is based solely on diversity of citizenship and because the underlying claims do not raise a federal question.[4] This argument is wholly without merit.

Section 2 of the Federal Arbitration Act, 9 U.S.C. § 2, sets forth the statutory criteria utilized to determine the scope of the Act's coverage. It provides:

> A written provision in any ... contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction, or the refusal to perform the whole or any part thereof, or an agreement in writing to submit to arbitration an existing controversy arising out of such a contract, transaction, or refusal, shall be valid, irrevocable, and

---

**2.** The assault claim was withdrawn by petitioners during the course of the arbitration proceedings.

**3.** Petitioners' and respondents' arbitration pleadings are annexed as Exhibit B to the Petition to Confirm Arbitration Award.

**4.** It is well-settled that the Act does not constitute an independent grant of jurisdiction to the federal courts. *See, e.g., Dorn v. Dorn's Transportation, Inc.*, 562 F.Supp. 822 (S.D.N.Y.1983).

enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.

Commerce is defined in section 1 as "commerce among the several states or with foreign nations."

There is little dispute as to the interstate nature of the underlying transactions in the instant case. These involved Venezuelan investors, a New York financial institution and the purchase and sale of securities on a national exchange. Thus, the Act clearly applies to the arbitration provision at issue.[5]

"In enacting the federal Arbitration Act, Congress created national substantive law governing questions of the validity and the enforceability of arbitration agreements under its coverage." *Genesco, Inc. v. T. Kakiuchi & Co., Ltd.*, 815 F.2d 840, 845 (2d Cir.1987). *See Southland Corp. v. Keating*, 465 U.S. 1, 12, 104 S.Ct. 852, 859, 79 L.Ed.2d 1 (1984) (Act creates a body of federal substantive law which governs question of arbitrability); *Moses H. Cone Memorial Hospital v. Mercury Construction Corp.*, 460 U.S. 1, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983) (federal substantive law created by Act applicable in both state and federal courts). Thus, once it is determined that a dispute is covered by the Act, "federal substantive law as set forth in the Act and federal court decisions governs the scope and interpretation of the agreement." *Cook Chocolate Co. v. Salomon, Inc.*, 684 F.Supp. 1177, 1182 (S.D.N.Y. 1988). *See also Coenen v. R.W. Pressprich & Co.*, 453 F.2d 1209, 1211 (2d Cir.), *cert. denied*, 406 U.S. 949, 92 S.Ct. 2045, 32 L.Ed.2d 337 (1972) (once a dispute is covered by the Act, federal law governs all questions of interpretation, construction, validity, revocability and enforceability).

Shearson argues that the existence of a choice-of-law clause in the Agreement alters the above analysis. It maintains that, because the Agreement provides for the application of New York law, the Court should look solely to New York state, rather than federal, arbitration law in this confirmation proceeding. The Court disagrees.

It is well-settled in this circuit that federal arbitration law applies to contracts embraced by the Act despite a contractual New York choice-of-law provision. *See, e.g., I/S Stavborg v. National Metal Converters, Inc.*, 500 F.2d 424 (2d Cir.1974); *Ore & Chemical Corp. v. Stinnes Interoil, Inc.*, 606 F.Supp. 1510, 1515 n. 5 (S.D.N.Y. 1985); *Masthead Mac Drilling Corp. v. Fleck*, 549 F.Supp. 854, 856 (S.D.N.Y.1982). "New York courts, in dealing with arbitration disputes where the contract involves interstate commerce, apply federal, and not state, arbitration law" notwithstanding a provision in the parties' agreement that it be governed by New York law. *Masthead Mac Drilling Corp. v. Fleck, supra*, 549 F.Supp. at 856 (quoting *Rothberg v. Loeb, Rhoades, & Co.*, 445 F.Supp. 1336 (S.D.N.Y.1978)). *See Cone Mills Corp. v. August F. Nielsen Co.*, 455 N.Y.S.2d 625, 627, 90 A.D.2d 31 (App.Div.1982) (contractual stipulation that New York law govern does not displace the FAA); *Bridas Sociedad Anonima Petrolera Industrial y Commercial v. International Standard Electric Corp.*, 490 N.Y.S.2d 711, 715, 128 Misc.2d 669 (Sup.Ct.1985) (same).[6]

To the extent that these decisions rest upon an assumption that federal arbitration law must be applied, notwithstanding a contrary choice by the parties, whenever the FAA comes into play, they have been undercut by the Supreme Court's decision in *Volt Information Sciences, Inc. v. Board of Trustees of the Leland Stanford Junior University*, 489 U.S. 468, 109 S.Ct. 1248, 103 L.Ed.2d 488 (1989) (*"Volt"*). In *Volt*, the Supreme Court held that the parties to an arbitration agreement otherwise governed by the FAA were entitled to spec-

---

**5.** Bendelac's assertion that the *Erie* doctrine mandates state law application is without merit.

**6.** Other circuits have held likewise. *See, e.g., New England Energy, Inc. v. Keystone Shipping Co.*, 855 F.2d 1, 4 n. 2 (1st Cir.1988), *cert. denied*, 489 U.S. 1077, 109 S.Ct. 1527, 103 L.Ed.2d 832 (1989); *Apex Fountain Sales, Inc. v. Kleinfeld*, 818 F.2d 1089 (3rd Cir.1987); *Mesa Operating Ltd. Partnership v. Louisiana Intrastate Gas Corp.*, 797 F.2d 238, 243–44 (5th Cir.1986).

ify that state arbitration rules would apply to disputes under their agreement. Accepting on its face the highest state court's determination that, based upon a choice-of-law provision in their contract, the parties had indeed intended that their contract be governed by state arbitration procedures,[7] the Supreme Court found that such a choice was permissible and should be enforced.

However, contrary to Shearson's assertions, *Volt* does not stand for the proposition that any time a choice-of-law provision is included in an arbitration agreement, such a provision necessarily requires the application of state, rather than federal, arbitration law. Rather, the Court merely held that where such a result is intended by the parties, that intention should be carried out by a court enforcing the arbitration agreement. The Court determined that:

> There is no federal policy favoring arbitration under a certain set of procedural rules; the federal policy is simply to ensure the enforceability, according to their terms, of private agreements to arbitrate.

*Id.* at 476, 109 S.Ct. at 1254.

The primary question for this Court therefore is whether the parties to the Agreement at issue in the instant case intended, by their inclusion of a New York choice-of-law clause, that New York arbitration law (including the New York prohibition on arbitral punitive damage awards) govern disputes between them. To resolve this question, the Court must apply general state law principles of contract interpretation to the choice-of-law provision, giving due regard to the federal policy favoring arbitration and resolving any ambiguities as to the scope of the arbitration clause itself in favor of arbitration. *Id.* at 475–76, 109 S.Ct. at 1254–1255. *See Moses H. Cone*

*Memorial Hospital v. Mercury Construction Corp.*, 460 U.S. 1, 24–25, 103 S.Ct. 927, 941–942, 74 L.Ed.2d 765 (1983); *Mitsubishi Motors Corp. v. Soler Chrysler–Plymouth, Inc.*, 473 U.S. 614, 626, 105 S.Ct. 3346, 3353, 87 L.Ed.2d 444 (1985); *Perry v. Thomas*, 482 U.S. 483, 493 n. 9, 107 S.Ct. 2520, 2527 n. 9, 96 L.Ed.2d 426 (1987).

In construing the contractual provision at issue, the first step is to determine whether the language is ambiguous. This determination is one of law. *Curry Road Ltd. v. K Mart Corp.*, 893 F.2d 509, 511 (2d Cir.1990). If it is unambiguous, the Court must of course enforce the provision as clearly written, without resort either to extrinsic evidence of intent, *see Burger King Corp. v. Horn & Hardart Co.*, 893 F.2d 525, 527 (2d Cir.1990), or to rules of construction. *See American Home Products Corp. v. Liberty Mutual Ins. Co.*, 748 F.2d 760 (2d Cir.1984). However, where contract language "is reasonably susceptible of more than one interpretation," *Burger King Corp. v. Horn & Hardart & Co.*, *supra*, 893 F.2d at 527, it is ambiguous and consideration of extrinsic evidence of intent or, if necessary, rules of construction, is appropriate.

In the context of the entire agreement between the parties, the Court finds the choice-of-law provision contained in the arbitration clause of the Agreement to be ambiguous. The clause admits of two possible readings, neither of which is patently unreasonable: the choice-of-law clause might on the one hand be read to require only the application by the arbitrators of New York *substantive* law to disputes between the parties, or on the other to mandate that New York substantive law, as well as New York arbitration law, apply to the arbitration proceeding.[8]

---

7. The Court declined to review this holding of the California Court of Appeal, noting that the interpretation of a contractual clause "is ordinarily a question of state law, which this Court does not sit to review." *Volt, supra*, 489 U.S. at 474, 109 S.Ct. at 1253.

8. The arbitration provision is also ambiguous specifically with respect to the issue of punitive

damages insofar as the sweeping provision appears to authorize punitive damages, *see* discussion, *infra* at 159–160, while at the same time "call[ing] that authority into question with a choice-of-law provision." *See Bonar v. Dean Witter Reynolds, Inc.*, 835 F.2d 1378, 1387 (11th Cir.1988).

Because the parties have submitted no extrinsic evidence concerning the intent of the contractual language at issue, it is appropriate for the Court to construe the contract as a matter of law. *See e.g., Schering Corp. v. Home Ins. Co.,* 712 F.2d 4, 9 (2d Cir.1983) (where contract language not wholly unambiguous, parties have a right to present extrinsic evidence of their intent at the time of contracting, and trial is required if conflicting evidence adduced); *Alfin, Inc. v. Pacific Ins. Co.,* 735 F.Supp. 115, 118 (S.D.N.Y.1990) (where no extrinsic evidence of intent presented, court should apply canons of construction to insurance contract, and construe contract as a matter of law). Applying general state law principles of contract interpretation, and giving due regard for the federal policies which underlie the FAA, the Court finds that the parties did not intend, through the inclusion of a choice-of-law clause in the Agreement, that New York arbitration law be applied to disputes under the Agreement.

As Justice Brennan pointed out in his dissent in *Volt,* it is "beyond dispute that the normal purpose of such choice-of-law clauses is to determine that the law of one State rather than that of another State will be applicable; they simply do not speak to any interaction between state and federal law." *Volt, supra,* 489 U.S. at 488, 109 S.Ct. at 1260 (Brennan, J., dissenting).[9] Other federal courts which have interpreted contractual language in contexts similar to that at issue here have held that:

> a choice of law provision in a contract governed by the [Federal] Arbitration Act merely designates the substantive law that the arbitrators must apply in determining whether the conduct of the parties warrants an award of punitive damages; it does not deprive the arbitra-

tors of their authority to award punitive damages.

*Bonar v. Dean Witter Reynolds, Inc., supra,* 835 F.2d at 1387; *Raytheon Co. v. Automated Business Systems, Inc.,* 882 F.2d 6, 11 n. 5 (1st Cir.1989) (citing federal cases)[10]; *Willoughby Roofing & Supply Co., Inc. v. Kajima International, Inc.,* 598 F.Supp. 353 (N.D.Ala.1984), *aff'd on opinion below,* 776 F.2d 269 (11th Cir.1985) (per curiam).

In *Bonar,* the Eleventh Circuit noted that where the scope of a contractual arbitration provision is sufficiently broad to authorize punitive damages in arbitration, and yet where the contract also provides for the application of the law of a state which disallows punitive awards, a court should resolve the ambiguity thus created by reference to the following "rule of construction:"

> ... in light of the federal policy that "any doubts concerning the scope of arbitral issues should be resolved in favor of arbitration," *Moses H. Cone Memorial Hosp. v. Mercury Constr. Corp.,* 460 U.S. 1, 24–25 [103 S.Ct. 927, 941–942, 74 L.Ed.2d 765] ... (1983), we must give precedence to the contract provisions allowing punitive damages.

*Bonar v. Dean Witter Reynolds, Inc., supra,* 835 F.2d at 1387.

Even absent a rule of construction giving precedence to that interpretation which favors arbitrability of claims, this Court would find that under general principles of contract interpretation the choice-of-law clause was intended to refer only to the substantive law to be applied by the arbitrators. It is a "basic tenet of contract law [that] where two seemingly conflicting contract provisions reasonably can be reconciled, a court is required to do so and give

---

9. Justice Brennan did not disagree with the majority's conclusion that, where the parties to a contract have agreed to arbitrate according to state arbitration rules and to the exclusion of federal arbitration law, the FAA does not operate to pre-empt the state arbitration rules. Rather, Justice Brennan challenged the Court's deference to the state court's interpretation of the contract, finding "that the parties have made no such agreement." *Id.* at 481 n. 4, 109 S.Ct. at 1257 n. 4.

10. In *Raytheon,* the First Circuit determined that nothing in *Volt* altered this conclusion. The court noted that, in *Volt,* "the scope of the arbitration agreement was not disputed," whereas the issue before the court in *Raytheon* "focuse[d] precisely on the scope of the arbitration agreement, *viz.,* whether it encompasse[d] punitive damages." *Id.*

both effect." *Proyecfin de Venezuela v. Banco Industrial*, 760 F.2d 390, 395–96 (2d Cir.1985) (citing 3 Corbin on Contracts § 547, at 172–72 (1960)). Here, the two seemingly conflicting provisions can reasonably be reconciled by interpreting the choice-of-law clause to refer to the substantive law to be applied in the arbitration proceeding. Because the arbitration clause in the Agreement authorizes an award of punitive damages, *see* discussion, *infra*, it would directly conflict with the choice of New York arbitration law which precludes punitive awards. However, no conflict is present if the parties intended merely to designate the substantive state law to be applied by the arbitrators.

Finally, under New York contract law, "[i]t is well settled that contracts made by private parties must necessarily be construed in the light of the applicable law at the time of their execution." *Goldfarb v. Goldfarb*, 450 N.Y.S.2d 212, 214, 86 A.D.2d 459 (App.Div.1982) (quoting 10 N.Y.Jur., Contracts, § 204, at 112). It was clear at the time that the Agreement was entered into that New York courts, as well as federal courts in this Circuit, considered choice-of-law provisions in arbitration agreements to designate only the substantive law to be applied by the arbitrators and not to override application of federal arbitration law in contracts governed by the FAA. This prevailing standard should be considered in an evaluation of the intent of the provision.

In light of the above discussion, the Court concludes that, unlike the situation in *Volt*, the parties in the instant case did not agree that arbitration proceedings under their Agreement were to be governed by New York arbitration rules.[11] Accordingly, the Court must apply federal standards governing the confirmation and vacation of arbitration awards, and look to the body of federal substantive law created by the Act, *Southland v. Keating, supra*, 465 U.S. at 12, 104 S.Ct. at 859, to determine whether the arbitration clause in the Agreement empowered the arbitration panel to award punitive damages.

## II. Standards for Confirmation or Vacation of Award.

Sections 9 and 10 of the Act, 9 U.S.C. §§ 9 & 10, set forth the governing standards to be applied in a proceeding to confirm or to vacate an arbitration award. A court must confirm an arbitration award unless the award is vacated, modified, or corrected as provided for under sections 10 and 11 of the Act.[12] 9 U.S.C. § 9. *See Ottley v. Schwartzberg*, 819 F.2d 373, 375 (2d Cir.1987).

Courts may vacate an arbitration award only upon a showing of one of the statutory grounds listed in the Arbitration Act, 9 U.S.C. § 10, if the arbitrators acted in manifest disregard of the law ... or if the award is incomplete, ambiguous, or contradictory, *Bell Aerospace Co., Div. of Textron v. Local 516*, 500 F.2d 921, 923 (2d Cir.1974) (footnote omitted).

*Transit Casualty Co. v. Trenwick Reinsurance Co., Ltd.*, 659 F.Supp. 1346, 1350–

---

**11.** After *Volt*, it is doubtful that any state rule, if actually agreed upon by the parties, would be preempted by the FAA. According to the reasoning of the Supreme Court, the primary policy of the FAA is to enforce the agreement of the parties. If that agreement includes governance by state rules which restrict arbitration in some respects, enforcement does not, under *Volt*, offend the FAA. This conclusion is cast into some doubt by the Supreme Court's statement in *Volt* that:

The question remains whether, assuming the choice-of-law clause meant what the Court of Appeal found it to mean, application of [the state law rule] is nonetheless pre-empted by the FAA to the extent it is used to stay arbitration under this contract involving interstate commerce.

*Volt, supra*, 489 U.S. at 476, 109 S.Ct. at 1254. However, because the Court resolved the question against a finding of preemption mainly by emphasizing that the parties are free to structure their arbitration agreement as they desire, it is difficult to conceive of any state rule that would be preempted if specified by the parties. This result makes sense, as the parties are clearly free to restrict, by their agreement, the scope of arbitrable issues. Nonetheless, ambiguity regarding whether the parties have actually agreed to be governed by restrictive state rules should be resolved, under *Moses H. Cone*, in favor of arbitrability.

**12.** Section 11 provides the standards for modification of an award, not here at issue.

51 (S.D.N.Y.1987), *aff'd without op.*, 841 F.2d 1117 (2d Cir.1988).

Section 10 of the Act provides that the award may be vacated upon the following grounds:

(a) Where the award was procured by corruption, fraud, or undue means.

(b) Where there was evident partiality or corruption in the arbitrators, or either of them.

(c) Where the arbitrators were guilty of misconduct in refusing to postpone the hearing upon sufficient cause shown, or in refusing to hear evidence pertinent and material to the controversy; or of any other misbehavior by which the rights of any party have been prejudiced.

(d) Where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made.

(e) Where an award is vacated and the time within which the agreement required the award to be made has not expired, the court may, in its discretion, direct a rehearing by the arbitrators.

■ The confirmation of an arbitration award is a summary proceeding that merely makes what is already a final arbitration award a judgment of the court. *Florasynth, Inc. v. Pickholz*, 750 F.2d 171, 176 (2d Cir.1984) (citation omitted). The grounds for vacation of an award are strictly limited in order to avoid frustrating the basic purposes of arbitration: disposing of disputes quickly and avoiding the expense and delay of litigation. *Transit Casualty Co. v. Trenwick Reinsurance Co., Ltd., supra,* 659 F.Supp. at 1351. Respondents, as the parties moving to vacate the award, bear the burden of proof. *Andros Compania Maritima, S.A. v. Marc Rich & Co., A.G.,* 579 F.2d 691, 700 (2d Cir.1978). The showing required to avoid summary confirmation is high. *Ottley v. Schwartzberg, supra,* 819 F.2d at 376.

Respondents, by arguing that the arbitrators exceeded their powers, are relying solely on section 10(d) of the Act.[13] The

Second Circuit, however, has consistently accorded the narrowest of readings to the Act's authorization to vacate awards based upon this section. *See, e.g., Andros Compania Maritima, S.A. v. Marc Rich & Co., A.G., supra,* 579 F.2d at 703. Respondents seek to fit within the limited scope of the section primarily by maintaining that arbitrators are not empowered, under New York law, to award punitive damages.

A. The Award of Punitive Damages—

■ The powers of an arbitrator are derived generally from the parties' contractual agreement to arbitrate. An arbitrator's award settling a dispute with respect to the interpretation or application of an agreement must draw its essence from the contract and cannot simply reflect the arbitrator's own notions of justice. *See United Paperworkers International Union v. Misco, Inc.,* 484 U.S. 29, 38, 108 S.Ct. 364, 370, 98 L.Ed.2d 286 (1987).

■ Consequently, in order to determine whether the arbitrators exceeded their powers by awarding punitive damages to the Barbiers, the Court must first determine whether the Agreement itself grants the arbitrators authority to award punitive damages, mindful of the federal policy that "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration, whether the problem at hand is the construction of the contract itself, or an allegation of waiver, delay or a like defense to arbitrability." *Moses H. Cone Memorial Hospital v. Mercury Construction Corp., supra,* 460 U.S. at 24–25, 103 S.Ct. at 941. An examination of the Agreement quickly reveals that it does authorize the arbitrators to consider claims for punitive damages.

The arbitration provision found at ¶ 13 of the Agreement broadly states that "*any* controversy arising out of or relating to my accounts ... *shall* be settled by arbitration...." (emphasis added). The provision cannot reasonably be restricted to questions of breach of contract, since by its

---

**13.** Although Bendelac moves to vacate pursuant to New York C.P.L.R. § 7511, the Court will treat the motion as if made pursuant to the F.A.A.

terms the Agreement covers any controversy arising out of or relating to petitioners' accounts, transactions between the parties, the Agreement, "or the breach thereof." Since agreements to arbitrate are generously construed, *Mitsubishi Motors Corp. v. Soler Chrysler–Plymouth, Inc., supra,* 473 U.S. at 626, 105 S.Ct. at 3353, it is sensible to interpret the provision to indicate "an intention to resolve through arbitration any dispute that would otherwise be settled in a court, and to allow the chosen dispute resolvers to award the same varieties and forms of damages or relief as a court would be empowered to award." *Raytheon Co. v. Automated Business Systems, Inc., supra,* 882 F.2d at 10. *See Willis v. Shearson/American Express, Inc.,* 569 F.Supp. 821, 823 (M.D.N.C.1983) (interpreting arbitration provision identical to provision in instant case).

In addition, the arbitration clause provides that petitioners may elect to proceed under the rules either of the National Association of Securities Dealers, or the NYSE. As noted above, the parties submitted their dispute without objection to a NYSE arbitration panel. Although the NYSE rules do not address the issue of punitive awards, the NYSE award form utilized by the Exchange explicitly provides for awards of punitive damages. *See* Notice of Petition to Confirm Arbitration Award, Exh. C. This suggests that the arbitration body chosen by the parties contemplates punitive awards where warranted by applicable law. *Cf., e.g., Raytheon Co. v. Automated Business Systems, Inc., supra,* 882 F.2d at 9–10 (clause requiring arbitration to be conducted under rules of American Arbitration Association, which rules empower arbitrator to grant any relief which is just and equitable, authorized award of punitive damages).

In sum, it is clear that the parties by their contract have authorized the arbitrators to award punitive damages. The contract purports to place no limits on the remedial authority of the arbitrators, nor should one be implied to exclude the authority to award punitive damages. *See Willoughby Roofing & Supply Co. Inc. v. Kajima International Inc., supra,* 598 F.Supp. at 357. Since, as noted above, the parties intended that the arbitrators apply substantive New York law to the resolution of their dispute, and New York courts are empowered to award punitive damages with respect to certain of the claims asserted by petitioners, the arbitrators, if they believed such damages to be an appropriate remedy under New York law, would be equally empowered. Therefore, any contention that the contract itself denied the arbitrators the power to award punitive damages must fail.

Inasmuch as the Agreement authorized the arbitrators to award punitive damages, respondents must demonstrate that, as a matter of law, such an award is improper. Respondents rely heavily on *Garrity v. Lyle Stuart, Inc.,* 40 N.Y.2d 354, 386 N.Y. S.2d 831, 353 N.E.2d 793 (1976), in which the New York Court of Appeals held that "[a]n arbitrator has no power to award punitive damages, even if agreed upon by the parties." *Garrity v. Lyle Stuart, Inc., supra,* 40 N.Y.2d at 356, 386 N.Y.S.2d at 832, 353 N.E.2d at 795. The *Garrity* Court reasoned that punitive damages are a form of sanction reserved to the State alone, one which was inapplicable in purely private disputes. *Id.*

 The *Garrity* decision, however, dealt only with the powers of arbitrators under state law and state public policy.[14] As previously discussed, however, federal law and federal policy under the FAA apply to the instant case. Thus, to the extent respondents urge the Court to apply the state law rule against punitive damage awards by arbitrators based upon the choice-of-law provision in the Agreement, their arguments must be rejected.[15]

---

**14.** The Court notes that the *Garrity* rule has come under increasing criticism. *See Raytheon Co. v. Automated Business Systems, Inc. supra,* 882 F.2d at 11 (citing Stipanowich, *Punitive Damages in Arbitration, Garrity v. Lyle Stuart,*

*Inc. Reconsidered,* 66 B.U.L.Rev. 953, 959 (1986)).

**15.** It is true that, notwithstanding the applicability of a federal substantive law of arbitration to contracts governed by the FAA, "the Federal

■ There remains the crucial issue whether, under the applicable federal substantive law of arbitration, punitive damage awards by arbitrators are permitted. The only Circuit Courts of Appeals which have directly considered the issue have adopted a rule endorsing the arbitrability of punitive damages claims. *See Raytheon Co. v. Automated Business Systems, Inc.,* 882 F.2d 6 (1st Cir.1989); *Bonar v. Dean Witter Reynolds, Inc.,* 835 F.2d 1378 (11th Cir.1988). A similar view has been embraced by virtually every federal district court which has considered the issue. *See, e.g., Dugall International, Inc. v. Sallmetall, B.V., supra,* No. 84 Civ. 7170, slip op. at 6 (S.D.N.Y. May 8, 1986) ("no reason, contractual or in law to take the issue of punitive damages from the arbitrator"); *Ehrich v. A.G. Edwards & Sons, Inc.,* 675 F.Supp. 559, 565 (D.S.D.1987) (allowing arbitrators to award punitive damages is consistent with the strong federal policy in favor of upholding an arbitrator's ability to fashion appropriate remedies); *Willis v.*

*Shearson/American Express, Inc.,* 569 F.Supp. 821, 824 (M.D.N.C.1983) (no reason persuasive enough to justify prohibiting arbitrators from resolving issues of punitive damages submitted by the parties); *Singer v. E.F. Hutton & Co., Inc.,* 699 F.Supp. 276, 278–79 (S.D.Fla.1988) (same). *See also Willoughby Roofing & Supply Co. v. Kajima International, Inc., supra,* 598 F.Supp. 353; *Peabody v. Rotan Mosle, Inc.,* 677 F.Supp. 1135 (M.D.Fla.1987).

Further, it is well-settled that, unless limited by the agreement, arbitrators have broad discretion to fashion remedies, and a court may overturn an award only when it clearly goes beyond the substantive issues submitted by the parties. *See, e.g., York Research Corp. v. Landgarten,* No. 89 Civ. 5556, 1990 U.S. Dist. LEXIS 4016 (S.D.N.Y. 1990). This certainly did not occur here.

The First Circuit in *Raytheon,* after a rigorous analysis of the issue, determined that where an arbitration provision in a commercial context [16] broadly authorizes

Arbitration Act has never been construed to preempt all state law on arbitration." *New England Energy Inc. v. Keystone Shipping Co., supra,* 855 F.2d at 4. In the instant case, however, the Agreement authorized the arbitrators to resolve claims involving punitive damage issues. Thus, it seems clear that, insofar as the *Garrity* rule precludes arbitration that was agreed to by the parties to the contract, it is preempted by section 2 of the Act.

"In enacting § 2 ... Congress declared a national policy favoring arbitration and withdrew the power of the states to require a judicial forum for the resolution of claims which the contracting parties agreed to resolve by arbitration." *Southland v. Keating, supra,* 465 U.S. at 10, 104 S.Ct. at 858 (finding preempted a provision of the California Franchise Investment Law that California courts had interpreted to require judicial consideration of claims arising under that law). *See Perry v. Thomas, supra,* 482 U.S. at 489, 107 S.Ct. at 2525 (finding preempted a provision of the California Labor Code which rendered unenforceable private agreements to arbitrate certain wage collection claims); *Securities Industry Association v. Connolly,* 883 F.2d 1114 (1st Cir.1989), *cert. denied,* — U.S. —, 110 S.Ct. 2559, 109 L.Ed.2d 742 (1990) (finding preempted Massachusetts regulations requiring arbitration clauses in broker/customer agreements to be conspicuous and to be subject to full written disclosure concerning their legal effect); *see also, Moses H. Cone Memorial Hospital v. Mercury Construction Corp., supra,* 460 U.S. at 24, 103 S.Ct. at 941 (section 2 is a

congressional declaration of a liberal federal policy favoring arbitration agreements, notwithstanding any state substantive or procedural policies to the contrary). Where the parties have agreed to submit to arbitration causes of action including punitive damage claims, and a state law declares such claims not arbitrable, the state is in effect requiring judicial consideration of claims which the parties have agreed to resolve by arbitration. This is precisely the type of state law that the FAA preempts. *See Duggal International, Inc. v. Sallmetall, B.V.,* No. 84 Civ. 7170 (S.D.N.Y. May 8, 1986) (because *Garrity* places substantive limits on arbitrability, New York law is not controlling and federal substantive law determines arbitrability of plaintiff's claims). *But see Fahnestock & Co. v. Waltman,* No. 90 Civ. 1792, 1990 WL 124354 (S.D.N.Y. August 22, 1990) (*Garrity* rule not preempted under *Southland* because it "is not in direct conflict with any express provision of the Federal Arbitration Act"). The Court notes that, contrary to the statement in *Fahnestock,* the conflict between the state law and the FAA need not be a "direct" conflict with an "express" provision of the Act. *See, e.g., Volt,* 489 U.S. at 477–78, 109 S.Ct. at 1255 (question is whether application of the state rule "would undermine the goals and policies of the FAA").

**16.** The court distinguished two federal labor arbitration cases requiring that the parties explicitly authorize punitive awards in their agreement, finding that "the profound difference between the two types of arbitration" rendered the

arbitrators to resolve a wide range of disputes and to accord appropriate relief, federal policy requires that punitive damage awards be confirmed. The court rejected contrary approaches taken by various state courts, which either disallowed punitive awards altogether, *e.g.*, *Garrity v. Lyle Stuart Inc.*, *supra*, 386 N.Y.S.2d 831, 353 N.E.2d 793; *Anderson v. Nichols*, 359 S.E.2d 117 (W.Va.1987); *Shaw v. Kuhnel & Assoc., Inc.*, 102 N.M. 607, 698 P.2d 880 (1985), or required a specific provision in the parties' contract allowing punitive damages to be awarded, *see Belko v. AVX Corp.*, 204 Cal.App.3d 894, 251 Cal.Rptr. 557 (1988), *review denied and op. withdrawn by order of court*, 1988 WL 96821 1988 Cal.LEXIS 862 (1988). Finding no federal authority to the contrary in the commercial context, the court determined that there existed "no reasoned justification for departing from the rule," adopted by every federal court which had thus far considered the issue, that arbitrators are empowered under federal law to award punitive damages under a broad arbitration agreement. *Raytheon Co. v. Automated Business Systems, Inc.*, *supra*, 882 F.2d at 11–12.

Respondents urge the Court to follow *Fahnestock & Co., Inc. v. Waltman*, *supra*, No. 90 Civ. 1792 (S.D.N.Y. August 22, 1990), a case decided while the instant petition was pending before this Court. In *Fahnestock*, a court in this district held that the *Garrity* doctrine mandated vacation of an arbitration panel's award of punitive damages. The court first held that *Garrity* was not preempted by the FAA, a conclusion with which this Court disagrees. *See supra* at 160 n. 15. The court then declined to follow *Bonar* and *Raytheon*, determining that it was bound to apply *Garrity* in light of Second Circuit prece-

dent "implicitly" affirming the *Garrity* decision.

The court in *Fahnstock* cited *John T. Brady & Co. v. FormEze Systems, Inc.*, 623 F.2d 261 (2d Cir.1980), *cert. denied*, 449 U.S. 1062, 101 S.Ct. 786, 66 L.Ed.2d 605 (1980) and *Synergy Gas Co. v. Sasso*, 853 F.2d 59 (2d Cir.), *cert. denied*, 488 U.S. 994, 109 S.Ct. 559, 102 L.Ed.2d 585 (1988), for the proposition that the Second Circuit has "implicitly, yet consistently, affirmed the *Garrity* decision in determining whether punitive damages were appropriate." *Fahnestock & Co. v. Waltman*, *supra* at 11. It is unclear from the decision whether the court in *Fahnstock* found that the Second Circuit had implicitly accepted *Garrity* as a matter of state law, or as a matter of federal law in this circuit.[17] However, after an examination of the cases relied upon in *Fahnstock*, this Court is of the view that the citations to *Garrity* by the Second Circuit did not evidence an intention to preclude punitive damage awards in arbitration as a matter of federal law. Rather, those cases appear to have applied state law, not reaching the question of preemption because the awards in those cases were found not to be punitive. Thus the dicta in *Synergy Gas* and *Brady* simply do not stand for the broad proposition that arbitrators are not empowered, as a matter of federal law, to award punitive damages.[18] This Court disagrees with the view that Second Circuit precedent compels federal acceptance of the *Garrity* doctrine.

Nor is there any persuasive federal, as opposed to state, policy prohibiting arbitrators from considering claims for punitive damages. The federal court decisions under the FAA upholding arbitrator's awards of punitive damages belie any claim of such

---

labor cases of little relevance to the question of punitive damages in a commercial arbitration setting. *See id.* at 10–11.

**17.** If the Second Circuit had indeed incorporated the *Garrity* principle into the federal substantive arbitration law of this circuit, then there would be no preemption issue as only contrary *state* laws are preempted by the FAA.

**18.** Moreover, *Brady* and for that matter *Garrity* itself, involved only claims of breach of contract, for which punitive damages are not available under substantive New York law. *Synergy Gas* involved the arbitration of a labor dispute under a collective bargaining agreement. The instant case, however, implicates the type of egregious tortious conduct for which punitive damages are ordinarily permitted.

a policy.[19] In addition, the Supreme Court's decision in *Shearson/American Express, Inc. v. McMahon,* 482 U.S. 220, 107 S.Ct. 2332, 96 L.Ed.2d 185 (1987), holding arbitrable RICO claims for treble damages, which are punitive in nature, lends support to a federal policy favoring the arbitrability of punitive damages claims. *See Ehrich v. A.G. Edwards & Sons, Inc., supra,* 675 F.Supp. at 564.

Shearson's reliance on cases finding punitive damages unavailable for violations of the federal securities laws is misplaced, as the claims in the instant case involve common-law tort causes of action in which punitive damages are, in just instances, an appropriate remedy.[20] As the *Raytheon* court noted:

> [p]unitive damages can serve as an effective deterrent to malicious or fraudulent conduct. Where such conduct could give rise to punitive damages if proved to a court, there is no compelling reason to prohibit a party which proves the same conduct to a panel of arbitrators from recovering the same damages. Certainly, the fact that the parties agreed to resolve their dispute through an expedited and less formal procedure does not mean that they should be required to surrender a legitimate claim to damages

*Raytheon Co. v. Automated Business Systems, Inc., supra,* 882 F.2d at 12.

In sum, the strong federal policies favoring arbitrability of issues and remedial flexibility of arbitrators govern the disposition of this case. Accordingly, the arbitrators' award of punitive damages is confirmed.

**B. Rendering award on all issues submitted—**

■ Finally, Bendelac contends that the award must be vacated because the arbitrators failed to render an award on all of the issues submitted to them. He essentially argues that since the award enumerates only three of the five claims initially submitted by petitioners, the arbitrators have "exceeded their powers" and "imperfectly executed" their powers in rendering the award. This argument is not convincing.

■ Arbitrators are not required to disclose the basis on which their awards are made. *Kurt Orban Co. v. Angeles Metal Systems,* 573 F.2d 739, 740 (2d Cir. 1978). If a ground for the arbitrator's decision can be inferred from the facts of the case, the award should not be vacated. *Id.* In the absence of any indication that an award was made in manifest disregard of the law, courts will not look beyond even a lump sum award in an attempt to analyze the reasoning processes of the arbitrators. *Id.* Arbitrators need not explain their rationale for an award to be confirmed. *Koch Oil S.A. v. Transocean Gulf Oil Co.,* 751 F.2d 551, 554 (2d Cir.1985).

Bendelac has wholly failed to demonstrate that the facts of the case did not warrant the award granted or that the award was made in manifest disregard of the law. After a complete review of the parties' submissions, the Court finds that the arbitrators considered all of the claims prior to rendering their award. While it may have been more satisfying to the parties if the arbitrators had explained how they disposed of each claim, such precision is not required. *See Svoboda v. Negey Associates, Inc.,* 655 F.Supp. 1329, 1333 (S.D.N.Y.1987).

Moreover, the arbitration award itself expressly states that it is rendered "in full and final settlement of all claims between the parties." Since Bendelac has provided no evidence to the contrary, he has failed to meet his burden with respect to this issue.

---

**19.** For a comprehensive exposition of the competing public policy considerations underlying the punitive damages issue, *see Willoughby Roofing & Supply Co., Inc. v. Kajima International, Inc., supra,* 598 F.Supp. at 359–364.

**20.** As petitioners point out, the NYSE arbitrators, in awarding compensatory and punitive damages, found that respondents had committed the wrongful acts alleged against them. Evidence adduced during the course of the arbitration proceedings demonstrated that petitioners' names were forged on various account documents, thus facilitating the unauthorized dissipation and conversion of petitioners' funds without their knowledge.

## CONCLUSION

For the foregoing reasons, the Barbiers' petition to confirm the arbitration award is granted. Bendelac's motion to vacate the award in its entirety and Shearson's motion to vacate the punitive damages component of the award are denied.

Settle judgment on notice.