In the Matter of the Arbitration Between
Rafael GONZALEZ and German Ramirez De Arellano, Plaintiff,

v.

**SHEARSON LEHMAN BROTHERS, INC., Defendant.**

Civ. No. 90–2622 (JP).

United States District Court,
D. Puerto Rico.

July 20, 1992.

Carlos A. Bobonis González, Bobonis, Bobonis & Rodríguez Poventud, Condado, P.R., for plaintiff.

Carlos J. Quilichini, Quilichini, Oliver, Medina & Gorbea, Hato Rey, P.R., for defendant.

## OPINION & ORDER

PIERAS, District Judge.

The Court has before it the Motion to Dismiss dated February 4, 1991, filed by respondent Shearson Lehman Brothers, Inc. (hereinafter "Shearson"), which requests that the Court dismiss the Application to Vacate Arbitrators' Award filed by petitioners Rafael González and German Ramírez de Arellano ("petitioners") on December 17, 1990. For the reasons set forth below, the motion to dismiss is hereby GRANTED.

### I. Background

On January 13, 1987, petitioners entered into written employment agreements with E.F. Hutton, Inc. ("E.F. Hutton"). At the same time, they executed promissory notes and loan forgiveness agreements pursuant to which they agreed to pay E.F. Hutton $78,000.00 and $70,000.00, respectively. These agreements were supplemented by agreements containing condonation clauses which stated that the obligation to pay the amounts set forth in the promissory notes would be forgivable in full in the event E.F. Hutton ceased operations in Puerto Rico. Inasmuch as these agreements relate to the purchase and sale of securities,

they involve interstate commerce. Both agreements provided that they "shall be governed by the laws of the State of New York in all respects including matters of construction, validity, and performance," and that "[a]ny controversy relation [sic] to or arising out of this Agreement or the breach thereof shall be submitted to and settled by Arbitration."

A few months after petitioners began working for E.F. Hutton, the company merged with Shearson. A few months after the merger petitioners submitted letters of resignation to Shearson, which responded by issuing collection letters demanding payment (i) from petitioner González in the amount of $73,823.72, reflecting $41,166.67 for the balance allegedly due under the promissory note and $32,657.05 for an alleged deficit in his drawing account, and (ii) from petitioner Ramírez in the amount of $65,962.57, reflecting $36,944.45 for the balance allegedly due on the promissory note and $29,018.12 for an alleged deficit in his drawing account. Petitioners refused to pay the amounts claimed. They asserted that E.F. Hutton, upon merging into Shearson, ceased operations in Puerto Rico so that the condonation clauses became effective and petitioners were relieved of the duty to repay their debts.

The dispute that arose between the parties was based on four issues: (i) petitioners' obligation to pay the amounts set forth in the collection letters; (ii) the effectiveness of the condonation clauses; (iii) petitioners' obligation to cover the alleged deficits in their drawing accounts; and (iv) the extent of any damages sustained by petitioners as a result of the conduct of E.F. Hutton and Shearson. The dispute was submitted to arbitration before the New York Stock Exchange, with Shearson claiming the amounts set forth in the collection letters and petitioners submitting counterclaims for damages in excess of $100,000.00.

An arbitration hearing was held in San Juan, Puerto Rico, on September 26, 1990. The hearing began with opening remarks by the chairman of the arbitration panel, who stated for the record that "[t]he Arbitrators have read all the papers that have been submitted in this case and are familiar with the case insofar as it is disclosed by these papers." Transcript at 2. These remarks were followed by opening statements. In commenting on petitioners' counterclaim, counsel for respondent stated:

> We understand that this counterclaim was in answer to our claim, and it is as harassment to our claim. Besides that, if that counterclaim would be filed in a local tribunal under the laws of Puerto Rico, probably as a frivolous one, a penalty would be imposed against the people who file frivolous actions.

Transcript at 10. During the testimonial portion of the hearing, petitioner González set forth his alleged damages as a result of the conduct of E.F. Hutton and Shearson, which included being forced to sell his house and car (*id.* at 181), and losing clients (*id.* at 187).

On October 2, 1990, the arbitrators rendered their decision in favor of Shearson. They found, "in full and final settlement of all claims between the parties," that petitioner González was liable in the amount of $34,000.00 and that petitioner Ramírez was liable in the amount of $30,000.00. They also taxed claimant for costs in the amount of $1,000.00. On December 17, 1990, petitioners filed an Application to Vacate Arbitrators' Award, invoking the jurisdiction of this Court pursuant to the Federal Arbitration Act, 9 U.S.C. § 10. Petitioners claim that the arbitrators "so imperfectly executed [their powers] that a mutual, final, and definite award upon the subject matter was not made." 9 U.S.C. § 10(d).[1] They contend that (i) the arbitrators failed to make a determination on the merits of the

---

1. Although the parties have not addressed the issue, it is clear that when a dispute is covered by the terms of the Federal Arbitration Act, "federal substantive law as set forth in the Act and federal court decisions governs the scope and interpretation of the agreement." *Cook* *Chocolate Co. v. Salomon, Inc.,* 684 F.Supp. 1177, 1182 (S.D.N.Y.1988). The existence of a choice of law clause in the arbitration agreement does not alter this fact. *Accord Barbier v. Shearson Lehman Hutton, Inc.,* 752 F.Supp. 151, 155 (S.D.N.Y.1990).

issues raised by petitioners in their answers and counterclaims and (ii) the arbitrators failed to make a clear award by failing to set forth the nature of the compensation awarded in light of the different claims asserted in the case.

## II. Discussion

■ The First Circuit has stated that "[i]t is a firm principle of federal labor law that where parties agree to submit a dispute to binding arbitration, absent unusual circumstances, they are bound by the outcome of said proceedings." *Posadas de Puerto Rico Associates, Inc. v. Asociación de Empleados de Casino de Puerto Rico*, 821 F.2d 60, 61 (1st Cir.1987) (citations omitted). As a result, extraordinary deference is given to conclusions reached by arbitrators. *See generally Dorado Beach Hotel v. Unión de Trabajadores*, 959 F.2d 2, 3–4 (1st Cir.1992), and cases cited therein. Furthermore, in enacting the Federal Arbitration Act, Congress created national substantive law governing questions on the validity and enforceability of arbitration agreements which fall under its coverage. *Accord Genesco, Inc. v. T. Kakiuchi & Co., Ltd,* 815 F.2d 840, 845 (2d Cir.1987). Engrafted in this law is a strong presumption that the grounds for vacating an arbitration award are strictly limited in order to avoid frustrating the basic efficiency purposes of arbitration. *Accord Transit Casualty Co. v. Trenwick Reinsurance Co. Ltd.,* 659 F.Supp. 1346, 1351 (S.D.N.Y. 1987). Pursuant to 9 U.S.C. § 10, however, the failure of an arbitration panel to make a definite award upon the subject matter may be valid grounds for vacating an award. To make such a showing, the party attacking the award must establish that it is marred by "an omission or refusal to make a finding." *Air Line Pilots Ass'n Int'l v. Aviation Assocs., Inc.,* 955 F.2d 90, 94 (1st Cir.1992).

■ As to petitioners' assertion that the arbitrators failed to consider their counterclaim, the record of the proceedings reflects that the arbitrators, although silent in their award regarding the counterclaim, did consider and render a decision on the claim. The chairman stated that the arbitrators had reviewed all the papers filed by the parties, which presumably included respondents' counterclaim. Respondents testified in some detail as to their alleged damages arising out of their counterclaim. As a result, the explicit statement in the award that it was in full and final settlement of *all claims* between the parties must be viewed as a statement that it included a decision on petitioners' counterclaim—in respondent's favor. The arbitrators may very well have accepted the contention of Shearson that the counterclaim was frivolous and concluded that it simply did not warrant any discussion. Such a conclusion on their part, although perhaps not advisable, would have been reasonable.

■ As for petitioners' assertion that the arbitrators failed to make a clear award by failing to set forth the nature of the compensation awarded, this alleged failure did not render the award so ambiguous that it lends itself to no definite interpretation which the court can enforce. *See Refino v. Feuer Transp., Inc.,* 480 F.Supp. 562 (S.D.N.Y.1979), *aff'd without op.,* 633 F.2d 205 (2d Cir.1980). The Court therefore finds that the award in this case is fully enforceable and that respondent's motion to dismiss must be GRANTED.

IT IS SO ORDERED.