14346

BURCH v. SOUTH CAROLINA COTTON GROWERS' CO-OP. ASSOCIATION

(187 S. E., 422)

Before Sharkey, J., Civil Court, Florence, September, 1935.

*Messrs. Bridges & Oulla* and *Sloan & Sloan,* for appellant,

Messrs. *McEachin & Townsend,* for respondent,

August 17, 1936.

*Per curiam.*

The evidence in this case discloses the following undisputed facts: On October 13, 1931, the plaintiff Burch entered into a written contract with the defendant association, under which he placed nine bales of cotton with the latter on what was known as its "optional pool plan." An advance on this cotton of $207.34 was made at the time, which represented its value, less two cents per pound. On June 1, 1932, the association wrote Burch, to which he made no reply, that it would be necessary, because of a decline in the market, for him to furnish further margin in the amount of $2.00 per bale. The cotton was sold by the association on the same day, June 1, 1932, and the proceeds of sale, after deducting expenses and a membership fee of $5.00, were paid to Swift & Co., mortgagee, and statements were mailed to Burch

showing the sale, disbursements, and the closing of his account. On October 4, 1933, Burch wired the association to sell the nine bales of cotton, and in reply thereto was advised of the sale and accounting of June 1, 1932. It may be here added that the plaintiff had also placed with the association three bales under the "annual pool plan," but the disposition of this cotton is not an issue in the case. It was referred to, however, because in settling for it the accounting statement of the defendant showed another deduction of $5.00 as a membership fee.

This action was brought on June 13, 1935, in which the plaintiff alleged that at the time he directed the association to sell his cotton its value was $508.47; that he maintained at all times an adequate margin to preserve his rights under the agreement; and that the sale by the association on June 1, 1932, was without authority from him and was an unlawful breach of the contract, and that he was damaged thereby in the sum of $270.74. For this amount he asked judgment.

The defendant by its answer interposed a general denial. It also alleged that the agreement between it and Burch was a marketing one and that the writing represented the entire contract; that the title to the cotton was vested in the association and that it had full power to control it as it deemed advisable; that on or about June 1, 1932, it was compelled to sell the nine bales as provided by the contract and laws of the State pertaining to co-operative marketing, the proceeds of the sale being duly accounted for to the plaintiff.

The case was tried in the Civil Court of Florence on September 17, 1935. The defendant's motions for a nonsuit and for a directed verdict, made at proper stages of the trial, were refused and the jury found for the plaintiff $246.50. This appeal followed.

Error is imputed to the trial Judge in the following particulars: (1) In ruling that Sections 6 and 11 of the written contract were repugnant to each other; (2) in permitting the

introduction of certain evidence; and (3) in overruling the defendant's motion for a directed verdict. These we will consider in the order named.

First. Involved in this question is appellant's complaint that the Court admitted parol evidence concerning the "optional pool plan" that was inconsistent with and contradictory to the written contract. We quote here the sections of the agreement referred to:

"6. The Association shall establish seasonal pools. The Association (through its board of directors) may create other pools and permit other optional price fixation and (or) sales privileges on account of cotton delivered hereunder, such options to include daily fixation privileges. The Association shall, from time to time, have the right to make such rules and regulations as it may deem proper governing all of said pools and options and to allocate expenses between pools and members as it may in its conclusive discretion deem equitable."

"11. The Grower agrees that title to the cotton delivered hereunder shall pass absolutely to the Association upon delivery; and that the Association may borrow money in its name on the cotton through drafts, acceptances, notes or otherwise, or on any warehouse receipts or bills of lading or upon accounts for the sale of cotton or on any commercial paper delivered therefor."

The plaintiff testified, over objection, that Dent, defendant's agent through whom the nine bales of cotton were placed with the association under its optional pool plan, told him at the time that they had two different pools and explained to him what they were: That he could put his cotton in the annual pool where the association would have exclusive right to sell it, or in the optional pool where the producer would have the right to say when it should be sold. Dent, as a witness for plaintiff, stated that he was in the employ of the defendant as a cotton classer in October, 1931, and as such received the cotton for the association, and that

it was delivered for the optional pool. When asked what was meant by "optional pool," he said that "it means that cotton is placed just like on futures, as long as he keeps the cotton properly margined for the fiscal cotton year, it is to be sold at the direction of the farmer," and that the plaintiff understood when he placed it that if he did not keep it adequately margined, the association would sell it; that the witness did not think that spot cotton had anything to do with optional pools, but that it was just a case of futures.

Counsel for the appellant argue that the above-stated testimony of the plaintiff and of Dent varied and contradicted the following provisions of the written contract: That title to the cotton passed to the association upon delivery, that the defendant might mingle the cotton of the grower with that of a like variety, grade, and staple delivered to it by other growers, and could sell the cotton received by it at such time and place and upon such terms as the association thought proper.

We are not in accord with this contention. As Section 6 of the agreement, which provides that an optional pool might be created by the association, does not attempt to define such pool, we think the plaintiff's testimony was admissible as showing his understanding of the term. No sound objection may be advanced to the admission of Dent's testimony. It in no way varied the terms of the written agreement, but merely purported to show, as the witness understood it, what was meant by "optional pool" as used, a matter about which the contract itself was silent. Furthermore, this testimony of these two witnesses, along with other competent evidence bearing upon the question, was admissible as an aid to the trial Judge in his construction of the written contract.

We think, however, that the Court was in error in holding that Sections 6 and 11 of the agreement are repugnant. Such holding had the effect of practically nullifying the written contract, under and by which the

plaintiff became a member of the association, and of substituting therefor an alleged oral understanding between the parties. A contract should be construed so as to give, if possible, full force and effect to every part of it. One of the meanings of the word "pool," according to Webster's International Dictionary, is "to contribute to a common fund, on the basis of a mutual division of profits or losses; to make a common interest of." According to the same authority, one meaning of "optional" is "a stipulated privilege, given to a party in a time contract, of demanding the fulfillment on any day within a specified limit."

The cotton referred to in Section 11 of the written agreement is the bales actually delivered to the association by the producer, the sale of which by the defendant, as provided in Section 10, does not affect in any way the rights of the member in the optional pool in which he has placed his cotton. Under the optional pool plan, which the association is permitted to create by Section 6, the producer has the right of optional price fixation and sales privileges, with regard to cotton placed by him in such pool, such options to include daily fixation privileges; that is to say, the right to determine when the price on his cotton shall be fixed, within, of course, whatever time limit is agreed upon, etc., without reference to what disposition the association may make, or may have made, of the bales of cotton actually delivered to it. As testified to by Dent, a witness for the plaintiff, it is just a case of futures, in the matter of price fixation, with which spot cotton has nothing to do. Such a relation exists between the association and one who becomes a member thereof, by mutual agreement and understanding, and not between the association and an outsider.

Second. The defendant challenges the action of the trial Judge in permitting the introduction of testimony to the effect that the plaintiff retained title to the cotton and could order it sold or could reclaim same at any time.

We think this was error. What we have already said in part applies. Under the terms of the written contract, the association itself had title to the nine bales of cotton actually delivered to it by the plaintiff, and could dispose of it at any time and in such manner it might deem profitable. This testimony, therefore, varied the terms of the written agreement and was inadmissible for that reason. In addition to this, it was irrelevant. The issue before the Court was not the title to the cotton, but the right of Burch to fix the price as between him and the association, and have the association account to him on that basis.

Further complaint is made that there was error in permitting parol testimony concerning the three bales of cotton in the annual pool and the $5.00 membership fee charged. The question of an adequate margin to protect the plaintiff's equity in the optional pool was an issue involved in the case, and any testimony that was competent and relevant as affecting it was admissible. The defendant admits that one membership fee of $5.00 was deducted from the fund available to cover the margin. It also admits that the other charge of $5.00 for such fee was a mistake and that the plaintiff was entitled to credit therefor. It seems clear, therefore, that such amount could properly be considered in determining whether there was an adequate margin for the protection of plaintiff's equity in the cotton on June 1, 1932. This assignment of error is without merit.

Third. The defendant's motion for a directed verdict, made on the ground that the plaintiff did not keep his cotton adequately margined as required, was properly refused. It appears from the evidence that the respondent, who was entitled to reasonable notice, was not given proper opportunity to furnish the margin, if margin was required, as the association sold the cotton, or closed out the contract, on the day it mailed the letter making the demand. The defendant knew, or should have known, that the notice would be received by the plaintiff too late for ac-

tion on his part and, in closing out the contract as it 'did, was guilty of arbitrary exercise of its powers, and the sale amounted to a breach of the contract.

This case must go back for a new trial. On such trial the plaintiff will be required to fix the price on his cotton by evidence of the futures market on the date he ordered the defendant to "sell," and not by the price of "spots," as he attempted to do on the trial from which this appeal is taken. The Court will also adjust any equities that may exist between the parties.

The judgment of the Court below is reversed, and the case remanded for a new trial consistent with the views herein expressed.

MR. CHIEF JUSTICE STABLER and MESSRS. JUSTICES BONHAM, BAKER and FISHBURNE concur.

MR. JUSTICE CARTER did not participate.