## 23904

H. Graham OSTEEN, II and Julia R. Osteen, Respondents

v. T.E. CUTTINO CONSTRUCTION COMPANY, Appellant.

(434 S.E. (2d) 281)

Supreme Court

*Charles E. Carpenter, Jr., Francis M. Mack,* and *Deborah*

*L. Harrison,* all of *Richardson, Plowden, Grier & Howser, P.A.,* Columbia, *for appellant.*

*M.M.Weinberg, III,* of *Weinberg, Brown & McDougall,* Sumter, *for respondents.*

Submitted June 11, 1993.

Decided July 12, 1993.

HARWELL, Chief Justice:

We are asked to determine the enforceability of an arbitration clause contained in a standard form construction contract. The trial judge found that the arbitration clause was invalid under South Carolina law, and that the parties should proceed with their dispute in a judicial forum. We reverse.

## I. FACTS

The underlying dispute arises out of the alleged breach of a contract entered into by appellant T.E. Cuttino Construction Company (Cuttino) and predecessors to respondents H. Graham Osteen, II and Julia R. Osteen (the Osteens) for the construction of a residence.[1] The Osteens filed suit in the court of common pleas, alleging numerous defects in construction and contending that Cuttino had failed to build a habitable dwelling. Cuttino moved to dismiss the action on the grounds that the contract between the parties contained an arbitration provision, and that the Osteens' remedy was to demand arbitration.

The contract between the parties is comprised of AIA Document A101 (Standard Form of Agreement Between Owner and Contractor 1977 Edition) and AIA Document A201 (General Conditions of the Contract for Construction 1976 Edition). AIA Document A201 contains the following language:

## ARTICLE 7

## MISCELLANEOUS PROVISIONS

7.1 Governing Law

7.1.1 The Contract shall be governed by the law of the place where the Project is located

---

[1] The original purchasers moved from Sumter and the Osteens purchased the house during its construction.

\*      \*      \*      \*      \*

7.9 Arbitration

7.9.1 All claims, disputes and other matters in question between the Contractor and the Owner arising out of, or relating to, the Contract Documents or the breach thereof . . . shall be decided by arbitration in accordance with the Construction Industry Arbitration Rules of American Arbitration Association then obtaining unless the parties mutually agree otherwise. . . . The foregoing agreement to arbitrate and any other agreement to arbitrate with an additional person or persons duly consented to by the parties to the Owner-Contractor Agreement shall be specifically enforceable under the prevailing arbitration law. The award tendered by the arbitrators shall be final, and judgment may be entered upon it in accordance with the applicable law in any court having jurisdiction thereof.

At the motion hearing, the Osteens took the position that section 7.1 indicates the law of South Carolina should determine all of the rights and responsibilities of the parties, including the parties' right to enforce arbitration in accordance with South Carolina law. According to the Osteens, the arbitration clause was rendered unenforceable because the contract failed to comply with S.C. Code Ann. § 15-48-10(a) Supp. 1992). Section 15-48-10(a) provides that "[n]otice that a contract is subject to arbitration pursuant to this chapter [Uniform Arbitration Act, S.C. Code Ann § 15-48-10 to -15-48-240 (Supp. 1992)] shall be typed in underlined capital letters, or rubber stamped prominently, on the first page of the contract and unless such notice is displayed thereon the contract shall not be subject to arbitration." It is undisputed that the contract does not conform to the requirements of section 15-48-19(a).

Cuttino asserted that the less technical requirements of the Federal Arbitration Act (FAA) superseded section 15-48-10(a) because the construction project involved interstate commerce.[2] The trial judge found that South Carolina law regulated arbitration under the contract, and ruled that because

---

[2] The Osteens raise no controversy that the project did not involve interstate commerce.

the formal requirements of section 15-48-10(a) had not been met, the dispute was not subject to arbitration.

## II. DISCUSSION

Cuttino contends that the trial judge erred in holding ■ that the parties contractually agreed that the provisions of section 15-48-10(a) would supersede the countervailing provisions of the FAA. According to Cuttino, the formal notice requirements of section 15-48-10(a) are preempted by the FAA, which mandates only that the arbitration agreement be in writing.

Section 2 of the FAA provides:

> A written provision in any . . . contract evidencing a transaction involving commerce to settle by arbitration a conversely thereafter arising out of such contract or transaction, or the refusal to perform the whole or any part thereof, or an agreement in writing to submit to arbitration an existing controversy arising out of such a contract, transaction, or refusal, shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.

9 U.S.C.A. § 2 (1970). Section 2 reflects a national policy favoring arbitration and withdrawing the power of the States to require a judicial forum for the resolution of claims which the contracting parties agreed to resolve by arbitration. *Southland Corp. v. Keating*, 465 U.S. 1, 10, 104 S.Ct. 852, 858, 70 L.Ed. (2d) 1, 12 (1984).

We have held that where, as here, a contract involves ■ interstate commerce, state law regarding arbitration is supplanted by federal substantive law. *Trident Technical College v. Lucas & Stubbs, Ltd.*, 286 S.C. 98, 333 S.E. (2d) 781 (1985), *cert. denied*, 474 U.S. 1060, 106 S.Ct. 803, 88 L.Ed. (2d) 779 (1986) *Episcopal Housing Corp. v. Federal Ins. Co.*, 269 S.C. 631, 239 S.E. (2d) 647 (1977). However, our decisions have been modified by the United States Supreme Court to the extent that they rest upon the assumption that federal arbitration law must be applied whenever interstate commerce is implicated, regardless of the intent of the parties. *See Volt Information Sciences, Inc. v. Board of Trustees*, 489 U.S. 468, 109 S.Ct. 1248, 103 L.Ed. (2d) 488 (1989). In *Volt*, the High

Court specifically noted that "[t]he FAA contains no express pre-emptive provision, nor does it reflect a congressional intent to occupy the entire field of arbitration." *Id.* at 477, 109 S.Ct. at 1255, 103 L.Ed. (2d) at 499. Thus, the FAA does not prevent enforcement of agreements to arbitrate under different rules than those set forth in the FAA itself, as long as the rules do not undermine the goals and policies of the FAA to ensure the enforceability, according to their terms, of private agreements to arbitrate. *Id.* at 476-79, 109 S.Ct. at 1254-55, 103 L.Ed (2d) at 498-500.

In our view, the trial judge correctly ascertained that the dispositive question is whether the parties intended to be bound by federal or state arbitration law. However, we disagree with the trial judge's construction of the "governing law" provision contained in AIA Document A201. In so doing, we have found the reasoning of the court in *Barbier v. Shearson Lehman Hutton, Inc.*, 752 F. Supp. 151 (S.D.N.Y 1990), *modified*, 948 F. (2d Cir. 1991), to be persuasive.

The *Barbier* court reviewed an agreement by which the plaintiffs opened an account for the purchase and sale of securities. The agreement contained an arbitration provision and stated that the agreement was to be governed by the laws of the State of New York. The Barbiers became dissatisfied with the services provided by Shearson Lehman and submitted their complaint to arbitration.

The issue on appeal was whether federal or New York arbitration law with regard to the award of punitive damages should apply. The *Barbier* court discerned that *Volt:*

> does not stand for the proposition that any time a choice-of-law provision is included in an arbitration agreement, such a provision necessarily requires the application of state, rather than federal, arbitration law. Rather, the Court merely held that *where such a result is intended by the parties*, that intention should be carried out by a court enforcing the arbitration agreement.

*Barbier*, 752 F. Supp. at 156.

The *Barbier* court applied general state law principles of contract interpretation in order to ascertain the parties' intent in including the choice-of-law provision in the agreement, "giving due regard to the federal policy favoring arbitration

and resolving any ambiguities as to the scope of the arbitration clause itself in favor of arbitration." *Id.*; *see also Volt,* 489 U.S. at 475, 109 S.Ct. at 1254, 103 L.Ed. (2d) at 498 (in applying general state-law principles of contract interpretation to the interpretation of an arbitration agreement within the scope of FAA, due regard must be given to federal policy favoring arbitration). The court found the choice-of-law clause to be susceptible of two readings, either (1) requiring the arbitrators to apply New York substantive law to disputes between the parties; or (2) mandating that both New York substantive law and New York arbitration law apply. Because the agreement was ambiguous and no extrinsic evidence had been presented by the parties indicating their intent in including the choice-of-law provision, the court resorted to rules of construction to interpret the agreement. The court found that the parties intended by including the choice-of-law provision to designate the substantive law that the arbitrators must apply in resolving conflicts arising under the agreement.

In *Barbier*, the parties had agreed to arbitration but disagreed as to what law the arbitrators should apply to the dispute. Here, we are faced with the even more basic question whether state arbitration law nullifies the arbitration clause, or whether the parties must submit to an arbitration process wherein South Carolina substantive law is utilized to dispose of the Osteens' claims. We perceive the underlying issue regarding the ambiguity in the contract as to the necessity of applying state or federal arbitration law to be analogous to the inquiry carefully analyzed in *Barbier*. In the contract before us, sections 7.1 and 7.9 create an ambiguity when read together. These two provisions may be construed as either (1) requiring the arbitrators to apply South Carolina law to disputes arising under the contract, or (2) encompassing state substantive and arbitration law to the exclusion of the FAA.

A court must construe an ambiguous contract in a manner that gives effect to all of its provisions, if the court reasonably may do so. *See Burch v. S.C. Cotton Growers' Co-op. Ass'n,* 181 S.C. 295, 187 S.C. 422 (1936); *accord Barbier,* 752 F. Supp. at 157-58 (citing 3 Corbin on Contracts § 547, at 172-73 (1960)); *Johnston County v. R.N. Rouse & Co.,* 331 N.C. 88, 414 S.E. (2d) 30 (1992) (citing 4 Samuel Williston, *A Treatise on the Law of Contracts* § 619, at 731 (3d ed. 1961))

(construing identical AIA standard form without reference to *Volt*). An agreement capable of an interpretation which will make it valid will be given such an interpretation if the agreement is ambiguous. *Romanus v. Biggs*, 214 S.C. 145, 51 S.E. (2d) 503 (1949). In accordance with these principles, we hold that the "arbitration" clause of AIA Document A201 comprises the parties' agreement to submit their disputes to arbitration. We further hold that the "governing law" provision of AIA Document A201 indicates the parties' agreement to have the validity and construction of the contract determined by arbitrators according to the substantive law "of the place where the Project is located."

We conclude that the trial judge erred in ruling that the arbitration clause contained in AIA Document A201 was not enforceable. Accordingly, the order of the trial judge is

Reversed.

CHANDLER, FINNEY, TOAL and MOORE, JJ., concur.