**LEWIS CENTRAL EDUCATION ASSOCIATION, Appellee,**

v.

**LEWIS CENTRAL COMMUNITY SCHOOL DISTRICT, Appellant.**

**No. 95–2216.**

Supreme Court of Iowa.

Feb. 19, 1997.

Rehearing Denied March 14, 1997.

Brian L. Gruhn, Cedar Rapids, for appellant.

William R. Unger, Des Moines, for appellee.

Considered by HARRIS, P.J., and CARTER, LAVORATO, SNELL, and TERNUS, JJ.

CARTER, Justice. .

The Lewis Central Education Association (the Association) brought this action to force arbitration of a dispute between one of its members and the Lewis Central Community School District (the district). The teacher in question, Virginia Reedy, sought to challenge an allegedly unfair performance evaluation through the formal grievance process provided in the master contract between the district and teachers employed by the district. The final stage of that grievance procedure contemplated that an employee not satisfied with the disposition of the grievance by the superintendent may submit the same to arbitration. For reasons that we will discuss in this opinion, the district declined to recognize Reedy's grievances or to agree to arbitration with respect thereto. Following a hearing, the district court determined the dispute was arbitrable under the master agreement. The district now appeals. After reviewing the record and considering the arguments presented, we reverse the judgment of the district court.

Virginia Reedy was employed as a sixth grade resource math instructor at a middle school in the district. In April 1994 the principal of that school completed a summative evaluation of her performance. That evaluation reflected that in two areas, fulfilling employee responsibilities and supporting school rules and procedures, Reedy did not meet the district's standards. At about this time, Reedy was informed that she would be transferred to another school within the district. Originally, it was contemplated that she would be transferred to a high school, but ultimately, she was transferred to an elementary school within the district.

On May 12, 1994, Reedy filed a grievance seeking to challenge the April performance evaluation. Her attempt to grieve this matter was rejected, first at the informal level with the principal and later at the formal level by the principal and superintendent. The reason that the district administrators gave for declining to hear Reedy's grievance was their interpretation of a clause in the master contract. That clause provided that "[a]ny nonprobationary employee who receives two or more 'Does Not Meet District

Standards' on his/her summative evaluation may grieve the elements of the evaluation which have not met district standards *at the time the summative evaluation causes adverse action on the employment status or level of compensation.*" (Emphasis added.) It was the position of district administrators that, because Reedy's transfer involved no loss of seniority or compensation, she had not suffered adverse action on employment status or level of compensation.

In ordering that the matter be submitted to arbitration, the district court relied on language from our opinion in *State v. State Police Officers Council,* suggesting that "[t]here is a presumption of arbitrability when the agreement contains an arbitration clause 'unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute.'" 525 N.W.2d 834, 836 (Iowa 1994). After referring to this language, the district court concluded that it could not say with positive assurance that the dispute was not arbitrable under the master contract.

The master contract between the parties provides a four-level process for employee grievances. A grievance is defined as "a claim by an employee, or group of employees, or the Association that there has been a violation, misinterpretation, or misapplication of any provision of this Agreement." It is thereafter provided that grievances shall be heard on four levels. Level one is an informal conference with the principal. Level two is a formal submission to the principal. Level three is an appeal of the principal's decision to the superintendent. Level four contemplates submission of the grievance to arbitration. The district argues that, notwithstanding the broad language of the grievance provisions of the master contract, the express language in the contract dealing with employee evaluations limits the filing of grievances over summative evaluations to situations in which the grievance has produced some adverse action on employment status or level of compensation. It continues to urge on this appeal that Reedy's transfer does not qualify as adverse action under this contract clause.

The first issue that we must resolve is the extent to which the court, as contrasted with the arbitrator, may resolve conflicting contract language dealing with the scope of arbitrability. The Association argues that such interpretive disputes must be sent to arbitration for resolution. It seeks to support this contention by reliance on our opinion in *AFSCME/Iowa Council 61 v. State,* 526 N.W.2d 282, 283 (Iowa 1995). We are unable to agree that this case supports that contention. In the *AFSCME/Iowa Council* case, 526 N.W.2d at 283, and the *State Police Officers Council* case, 525 N.W.2d at 836, the resistance to arbitration was tied to arguments that, when analyzed, went to the merits of the case rather than any language of the agreement that established the type of issues that could be arbitrated. Within that context, we decided that a court is foreclosed from deciding issues of contract interpretation that involve the merits of the underlying dispute. These cases do not, however, restrict a court from interpreting the language in the contract that affects the extent of the agreement to arbitrate a dispute. We have recognized that the judicial task with regard to the latter inquiry is twofold: to determine whether there is a valid agreement to arbitrate and to determine whether the controversy alleged is embraced by that agreement. *Postville Community Sch. Dist. v. Billmeyer,* 548 N.W.2d 558, 560 (Iowa 1996). For reasons that we will detail, both of these determinations are for the court to make rather than the arbitrator.

The Association does not limit itself to the claim that the arbitrator has the power to construe the master contract's substantive language. Rather, it argues that the arbitrator has the authority, to the exclusion of the courts, to construe a limitation on its power to hear disputes. We cannot agree with this contention because it subverts the purpose of a contract clause limiting the issues that an arbitrator may consider. As a necessary incident of a court's power to determine arbitrability, it must interpret the arbitration agreement. *AFSCME/Iowa Council,* 526 N.W.2d at 283; *City of Milwaukee v. Milwaukee Police Ass'n,* 97 Wis.2d 15, 292 N.W.2d 841, 844 (1980). If the court detects

an ambiguity, it resolves that ambiguity as in any other contract dispute. *Osteen v. T.E. Cuttino Constr. Co.*, 315 S.C. 422, 434 S.E.2d 281, 284 (1993). The presumption in favor of arbitration that we recognized in the *State Police Officers Council* case is not an admonition to defer to the arbitrator on interpretive issues concerning what issues may be arbitrated. It is, rather, a tie-breaking factor for the court to employ in resolving interpretive disputes that are otherwise in equipoise.

The foregoing conclusions are supported by a large number of state and federal cases. *See John Wiley & Sons v. Livingston*, 376 U.S. 543, 546–47, 84 S.Ct. 909, 912–13, 11 L.Ed.2d 898, 902–03 (1964) (*court* to determine scope of arbitration agreement); *Westinghouse Hanford Co. v. Hanford Atomic Metal Trades Council*, 940 F.2d 513, 516 (9th Cir.1991) ("The threshold question of arbitrability—which is no less than the question of the arbitrator's jurisdiction to decide disputes—is thus a question for judicial resolution."); *Salary Policy Employee Panel v. TVA*, 731 F.2d 325, 332 (6th Cir.1984) (examination for ambiguities in arbitration agreements is a judicial task); *Cincinnati Gas & Elec. Co. v. Benjamin F. Shaw Co.*, 706 F.2d 155, 159 (6th Cir.1983) (court has authority to "determine what the language used in the [arbitration agreement] meant"); *Kansas City Royals Baseball Corp. v. Major League Baseball Players Ass'n*, 532 F.2d 615, 620 (8th Cir.1976) ("The question of arbitrability is thus one of contract construction and is for the courts to decide."); *Policemen's & Firemen's Retirement Bd. v. Sullivan*, 173 Conn. 1, 376 A.2d 399, 403 (1977) (courts have historically established interpretive role); *American Fed'n of Gov't Employees, Local 3721 v. District of Columbia*, 563 A.2d 361, 362 (D.C.App.1989) (trial court determines meaning of arbitration agreement as applied to particular issue); *In re Niagara Frontier Transp. Auth.*, 179 A.D.2d 1037, 579 N.Y.S.2d 517, 518 (1992) (court decides whether language is a condition precedent to arbitration); *see generally* Alison Brooke Overby, Note, *Arbitrability of Disputes Under the Federal Arbitration Act*, 71 Iowa L.Rev. 1137, 1149–50 (1986) (criticizing courts that, based on a "broad arbitration clause," refer the question of arbitrability to arbitration "without any further judicial scrutiny").

When examining the language used in the present agreement, we cannot agree with the district court that it is not clear that disputes over summative grievances that did not result in adverse consequences of the type specified in the contract were excluded from the grievance process. The plain meaning of the contract language is that they are excluded. When interpreting a contract, we seek to give effect to the language of the entire agreement in accordance with its commonly accepted and ordinary meaning. *Home Fed. Sav. & Loan Ass'n v. Campney*, 357 N.W.2d 613, 617 (Iowa 1984). The context in which an agreement is made may influence interpretation when appropriate. *Id.*; *Setterberg v. Sheaffer Eaton, Inc.*, 473 N.W.2d 217, 220 (Iowa App.1991).

The limiting interpretation that the district advances finds support not only in the contract language but also in the context of the evaluation process. Summative evaluations are given to all teachers at regular intervals. They are subjective in nature and will often be the subject of disagreement. Permitting the formal grievance procedure to be burdened with challenges to evaluations that have produced no adverse consequences to the teacher involved could overburden the system. We believe that this is precisely what the master contract is attempting to prevent. Stated somewhat differently, we believe that under the agreement summative evaluations of the type at issue are not grievable in isolation but only in connection with a challenge to some adverse action that has been taken against the teacher as a result of the evaluation. Because Reedy chose not to challenge her transfer to an elementary school position, she is only attempting to challenge the evaluation in isolation. The contract does not permit that type of dissatisfaction to be the basis of the grievance procedure leading to arbitration.

We have considered all issues presented and conclude that the judgment of the district court should be reversed. The case is remanded to that court for a judgment deny-

ing the Association's petition to compel arbitration.

**REVERSED AND REMANDED.**