494 S.E.2d 847

**R. Charles HURST, Jr. and Terri K. Hurst, Appellants,**

**v.**

**Floyd E. SANDY, Individually and as President of Sandy Construction Company, Inc., Respondent.**

No. 2753.

Court of Appeals of South Carolina.

Heard Oct. 9, 1997.

Decided Nov. 17, 1997.

Rehearing Denied Dec. 19, 1997.

472

J. Edward Bell, III, of Bell & Moore; and Linwood S. Evans, Jr., Sumter, for appellants.

M.M. Weinberg, Jr., and M.M. Weinberg, III, both of Weinberg, Brown & McMillan, Sumter, for respondent.

CURETON, Judge:

In this lawsuit, arising from an alleged defective design of a residence, the Hursts appeal the grant of summary judgment

to Floyd E. Sandy, Respondent.[1]  We affirm in part, reverse in part and remand.

## *Facts*

Viewed in the light most favorable to the Hursts, the evidence is as follows.  In April or May 1989, Mr. Hurst discussed with William Sandy, a draftsman and Vice–President of SCC, the design and building of a residence in Sumter. After Mr. Hurst described the house he wanted built, William told him he could draw the design plans.  The Hursts hired William and orally agreed to pay him $1,000 for this service.

William Sandy did not prepare the design plans alone. Instead, he consulted Floyd Sandy, his father and president of SCC, about the design of the house.  In the course of consulting with William, Floyd Sandy inspected the building site, reviewed the plans for building code compliance and adequate footings for the foundation, and called the County Planning Commission on acceptable setbacks and other zoning matters.

After William Sandy completed the plans, the lending company informed the Hursts that it would not finance the construction of a house of this size without "engineering or architectural approval."  Accordingly, the Hursts told William Sandy that, as a condition of the loan, the plans must be reviewed by an engineer or architect and stamped with a seal.

Floyd Sandy, a licensed civil engineer, possessed a seal bearing the words "California, Registered Professional Engineer, Floyd E. Sandy."  His seal was placed on the plans, though he testified that he did not personally stamp the plans. It was fairly established by the pleadings and depositions that William stamped the plans and then submitted them to the financing company.  Although the plans contained a California seal, the financing company accepted the stamp and granted the loan.

---

1.  The Hursts brought suit against Floyd E. Sandy, individually and as president of Sandy Construction Company, Inc. (SCC), SCC, and William Sandy.  The trial court granted a motion to dismiss as to SCC, William Sandy and Floyd Sandy, and also a motion for summary judgment as to Floyd Sandy, individually.  This opinion will address only those claims raised against Floyd Sandy, individually because only that argument is presented in the appellant's brief.  Rule 207(b)(1)(B) SCACR.

After the plans were approved, the Hursts entered into a written contract with SCC to construct their house. By March 1991, SCC had substantially completed construction of the house and the Hursts moved in. After taking possession of the house, the Hursts discovered numerous construction defects in the dwelling. SCC and the Hursts agreed to arbitrate the construction issues pursuant to the arbitration clause in the contract.

As required by the arbitration award, SCC made numerous repairs to the house. Despite the repairs, the Hursts noticed new cracks in the structure, sinking floors, and other problems associated with the poor structural design. The Hursts retained a consulting engineer to examine these defects. The expert's report noted that if defects reoccurred after repairs, the defects could "indicate inadequate strength in the structural members and/or footings." Because the problems persisted, the Hursts employed an engineering firm to inspect the foundation and structure of the house. This second report concluded that the weight of the dwelling far exceeded the capacity of the foundation as designed and constructed.

The Hursts thereafter filed suit against Floyd Sandy, SCC, and William Sandy alleging several causes of actions for defective design. Floyd Sandy filed a motion for summary judgment on all claims arguing the construction contract was made with SCC, the design contract was made with William Sandy and thus, there was no cause of action against him, personally. The trial judge agreed and granted the motion.

### *Law/Analysis*

Summary judgment is appropriate only when "there is no genuine issue of material fact and that the moving party is entitled to a judgment as a matter of law." Rule 56(c), SCRCP. "In determining whether any triable issues of fact exist, the evidence and all inferences which can be reasonably drawn from the evidence must be viewed in the light most favorable to the nonmoving party." *Koester v. Carolina Rental Center, Inc.*, 313 S.C. 490, 443 S.E.2d 392 (1994).

### I. Negligence

As to their negligence claim, the Hursts present two arguments on appeal: (1) that the trial court erred in granting

summary judgment because the evidence was sufficient to show violation of a statute, which constitutes negligence per se, and that Floyd Sandy's violation of this statute was the proximate cause of their injury, and (2) that the trial court erred in granting summary judgment because the evidence sufficiently raised disputed issues of fact regarding Floyd Sandy's violation of a common law duty to exercise reasonable care in undertaking to perform services owed by another.

## A. Duty Arising From Statute

The Hursts contend that because registration of engineers is governed by S.C.Code Ann. § 40–21–30 (1988) (current version at § 40–22–30) (effective July 1, 1991)[2], there was negligence per se on the part of the respondent, as an unregistered engineer, for performing engineering services in connection with the design of their home.[3] They presented Floyd Sandy's testimony in which he admitted: (1) he is not a registered engineer in this state, (2) he consulted and advised William Sandy concerning the design plans by analyzing the plans for building code compliance, foundational requirements of footings and loadings and zoning requirements, and (3) he

---

2. S.C.Code Ann § 40–22–30 (Supp.1996) provides:

> In order to safeguard life, health, and property and to promote the public welfare, a person in either public or private capacity practicing or offering to practice engineering or land surveying must submit evidence that he is qualified to practice and must be registered as provided in this chapter. It is unlawful for a person to practice or to offer to practice in this State engineering or land surveying, as defined in Section 40–22–10, or to use in connection with his name or otherwise assume, use, or advertise a title or description tending to convey the impression that he is a professional engineer or a land surveyor, unless the person is registered under the provisions of this chapter.·

3. S.C.Code Ann. § 40–22–10 (Supp.1996) defines the "practice of engineering" as follows:

> "Practice of engineering" means a professional service or creative work requiring engineering education, training, and experience, and the application of special knowledge of the mathematical, physical, and engineering sciences to professional services or creative work as *consultation, investigation, evaluation, planning, design, and observation of construction for the purpose of evaluating compliance with specifications and design in connection with public or private utilities, structures, buildings, machines, equipment, processes, works, or projects.* (Emphasis added).

inspected the general bearing capacity of the soil. In addition, the Hursts presented expert testimony that the design failed to meet certain requirements of the standard building codes.

On the other hand, Floyd Sandy generally denies he was negligent. In his deposition, he identifies his activities as the practice of general contracting rather than the practice of engineering.

■ In considering a negligence per se action, we are guided by the case of *Rayfield v. S.C. Dept.' of Corrections*, 297 S.C. 95, 374 S.E.2d 910 (Ct.App.1988), *cert. denied*, 298 S.C. 204, 379 S.E.2d 133 (1989). In *Rayfield*, this court set forth the two requirements to determine when a duty created by statute will support an action for negligence. We quote from the opinion:

> In order to show that the defendant owes him a duty of care arising from a statute, the plaintiff must show two things: (1) that the essential purpose of the statute is to protect from the kind of harm the plaintiff has suffered; and (2) that he is a member of the class of persons the statute is intended to protect.

*Id.* at 103, 374 S.E.2d at 914.

■ In a subsequent decision, our Supreme Court further extended the analysis by stating that "the plaintiff must prove violation of the statute was causally linked, both in fact and proximately, to the injury." *Whitlaw v. Kroger Co.*, 306 S.C. 51, 55, 410 S.E.2d 251, 253 (1991).

Chapter 22 of Title 40 of the South Carolina Code codifies the law relating to the registration of engineers and land surveyors by the South Carolina State Board of Registration for Professional Engineers and Land Surveyors. 7 S.C.Juris. *Architects and Engineers* § 1 (1991); S.C.Code Ann. § 40–22–10 to § 40–22–460 (1991). As stated in § 40–22–30, the practice of engineering is regulated "[i]n order to safeguard life, health, and property and to promote the public welfare." S.C.Code Ann. § 40–22–30; 7 S.C.Juris. *Architects and Engineers* § 4 (1991). The statute prohibits the practice of engineering without registration and clearly defines those activities which constitute the practice of engineering. S.C.Code Ann. § 40–22–30; § 40–22–10 (1991).

■ The provisions of Chapter 22 are intended to regulate the practice of engineering by requiring persons who want to engage in this profession to be licensed and registered. Further, this chapter is directed to the engineering profession because it authorizes the Board to sanction a registrant who violates any of the provisions of the Code or regulations of the Board. S.C.Code Ann. § 40–22–390 (Supp.1996).

■ Insofar as we understand the essential purpose of this statute, we believe the Hursts have failed to satisfy the first prong of the *Rayfield* test. The essential purpose of Chapter 22 is the regulation of the practice of a profession, rather than the imposition of civil liability to private individuals. *See Dorman v. Aiken Communications, Inc.* 303 S.C. 63, 398 S.E.2d 687 (1990); *Whitworth v. Fast Fare Mkts. of S.C. Inc.*, 289 S.C. 418, 338 S.E.2d 155 (1985); 4 S.C.Juris. *Action* § 14 (1991) (stating that in the determination of private rights, the court has applied as a general rule that a statute which does not purport to establish a civil liability, but merely makes provision to secure the safety or welfare of the public as an entity is not subject to a construction establishing a civil liability).

Even if we were to assume that the Hursts established the elements of negligence per se, we are still faced with a question of whether such an action may be premised on a licensing statute. In their brief, the Hursts cite one authority which supports their contention that state statutes setting standards for engineers may be the foundation for a cause of action against the engineer for negligence.[4] However, we find no such standards have been set in this statute.[5]

---

4. A reference is made to 17 Am.Jur. (3d) *Proof of Facts* 49, 68 (1994).

5. In reviewing cases from other jurisdictions, we find that many courts adhere to the rule that licensing statutes that fail to set forth a standard of care cannot be the basis of a negligence per se claim. See *Hunter v. BPS Guard Servs., Inc.*, 100 Ohio App.3d 532, 654 N.E.2d 405 (1995); *Finkle v. Mayerchak*, 578 So.2d 396 (Fla.App.1991); *American Mortgage Investment Co. v. Hardin–Stockton Corp.*, 671 S.W.2d 283 (Mo.App. 1984); *cf. Evans v. Rite Aid Corp.*, 324 S.C. 269, 478 S.E.2d 846 (1996) (finding no duty of confidentiality arising from a licensing statute regulating pharmacists); *Smith v. Haynsworth, Marion, McKay & Geurard*, 322 S.C. 433, 472 S.E.2d 612 (1996) (finding Rules of Professional Conduct (RPC) may be relevant and admissible in assessing a legal duty

■ Our reading of the relevant South Carolina code sections and cases, convinces us that the essential purpose of the statute, as alleged by the Hursts, is inconsistent with the legislative intent in enacting this statute. Further, we find that a licensing statute will not ordinarily provide a basis for a negligence per se action. Therefore, we hold, as to this claim, the Hursts have not demonstrated that an issue of material fact is in dispute. We affirm the trial court on this cause of action.

## B. Duty Arising From Undertaking

Independent of his statutory duty, the Hursts next contend Floyd Sandy breached a common law duty. Specifically, they allege he had a duty to exercise reasonable care because he had undertaken to perform a duty owed by William Sandy to them.

■ At common law, when there is no duty to act, but an act is voluntarily undertaken, the actor assumes a duty to use due care. *Byerly v. Connor,* 307 S.C. 441, 415 S.E.2d 796 (1992); *Sherer v. James,* 290 S.C. 404, 351 S.E.2d 148 (1986).[6]

■ The record shows that William Sandy assumed a contractual duty to draft the design plans. It also shows that Floyd Sandy reviewed the plans prepared by William for building code compliance, general bearing capacity of the soil, set-backs for zoning requirements, and legal standards of Sumter County for foundations.

---

of an attorney in a malpractice action; however, violation of RPC did not constitute negligence per se).

**6.** The *Sherer* court embraced the Restatement (Second) of Torts, Section 324(a) (1965), which provides as follows:

One who undertakes, gratuitously or for consideration, to render services to another which he should recognize as necessary for the protection of a third person or his things, is subject to liability to the third person for physical harm resulting from his failure to exercise reasonable care to protect his undertaking, if

(a) his failure to exercise reasonable care increases the risk of such harm, or

(b) he has undertaken to perform a duty owed by the other to the third person, or

(c) the harm is suffered because of reliance of the other or the third person upon the undertaking.

Viewing the evidence, in the light most favorable to the Hursts, we find a genuine issue of fact exists as to whether Floyd Sandy owed a duty to the Hursts and whether he is subject to liability for any harm in performing services in connection with the design of the Hursts' home. Accordingly, we reverse the grant of summary judgment on this claim.

## II. Negligent Misrepresentation

Included in this action is a claim that Floyd Sandy negligently misrepresented facts which induced the Hursts to enter into the construction contract with SCC.

To state a claim for negligent misrepresentation, the plaintiff must allege (1) the defendant made a false representation to the plaintiff, (2) the defendant had a pecuniary interest in making the statement, (3) the defendant owed a duty of care to see that he communicated truthful information to the plaintiff, (4) the defendant breached that duty by failing to exercise due care, (5) the plaintiff justifiably relied on the representation, and (6) the plaintiff suffered a pecuniary loss as the proximate result of his reliance on the representation. *Fields v. Melrose Ltd. Partnership,* 312 S.C. 102, 439 S.E.2d 283 (Ct.App.1993).

The Hursts argue, by virtue of his seal, Floyd Sandy represented that the plans had been prepared by or under the supervision of a professional engineer. Further, they argue that they relied on the seal to obtain financing and in authorizing SCC to build the house in accordance with the plans.

On the other hand, Floyd Sandy argues he made no false representation. In his deposition, he denied that he stamped the plans himself. He further testified that he had no actual knowledge of the person who stamped the plans, nor did he approve the placement of his stamp upon the plans.

The construction contract which was signed by Floyd Sandy indicates the plans were approved by the Hursts and Floyd Sandy. Although testifying he did not meet Floyd Sandy until near the end of the construction period, Mr. Hurst's affidavit indicates that (1) prior to final acceptance of the plans and specifications, Floyd Sandy's seal was placed on the plans, (2) Floyd Sandy acknowledged by signing the contract that he

was aware that his seal had been placed on the plans, (3) he relied on Floyd Sandy's review and approval of the plans prior to his final acceptance of the plans and prior to the commencement of construction of his home, (4) he relied upon Floyd Sandy's engineering stamp as certification that the plans and design of his home met appropriate engineering standards, and (5) he used what he believed to have been plans and specifications which were approved by an engineer "who was allowed to do business in South Carolina" to obtain financing. Further, Floyd Sandy acknowledged in his deposition that the finance company requested "a stamp on the plans" and that he told the company he was only registered in California.

Viewing the evidence in the light most favorable to the Hursts and construing all ambiguities, conclusions and inferences arising from the facts against Floyd Sandy, we conclude the evidence is sufficient to show a disputed issue of fact as to whether Floyd Sandy negligently misrepresented the plans bearing his seal. *See ML–Lee Acquisition Fund v. Deloitte & Touche,* 320 S.C. 143, 463 S.E.2d 618 (1995), *rev'd on other grounds,* 327 S.C. 238, 489 S.E.2d 470 (1997) (citing *State Farm Mut. Auto. Ins. Co. v. Pennsylvania Nat'l Mut. Casualty Ins. Co.,* 263 S.C. 391, 210 S.E.2d 613 (1974) (whether or not there has been a misrepresentation is an ultimate issue of fact for the jury)).

## III. Fraud

In addition, the Hursts contend summary judgment was inappropriate on their claim of fraud because there was a genuine issue of fact as to whether Floyd Sandy fraudulently held himself out as a qualified South Carolina engineer.

To establish fraud, the following elements must be shown: (1) a representation, (2) its falsity, (3) its materiality, (4) either knowledge of its falsity or a reckless disregard of its truth or falsity, (5) intent that the representation be acted upon, (6) the hearer's ignorance of its falsity, (7) the hearer's reliance on its truth, (8) the hearer's right to rely thereon, and (9) the hearer's consequent and proximate injury. *Ardis v. Cox,* 314 S.C. 512, 431 S.E.2d 267 (Ct.App.1993).

Negligent misrepresentation is distinguishable from fraud in that to prove the elements of fraud, the plaintiff must

show that the defendant conveyed a known falsity. *Gordon–Gallup Realtors v. Cincinnati Ins. Co.*, 274 S.C. 468, 265 S.E.2d 38 (1980); *Pittman v. Galloway*, 281 S.C. 70, 313 S.E.2d 632 (Ct.App.1984).

Nowhere in Mr. Hurst's deposition and affidavit does he state that anyone ever told him Floyd Sandy was licensed as an engineer in South Carolina. An examination of the seal placed on the plans, would have shown Floyd Sandy was licensed in California. Mr. Hurst acknowledged he never talked to Floyd Sandy prior to the beginning of construction. While Mr. Hurst states in his affidavit that he had the impression [7] that Floyd Sandy was a licensed engineer "who was allowed to do business in South Carolina," that impression most probably came from William Sandy, the person with whom he dealt.

As we view the evidence and all its inferences in the light most favorable to the Hursts, we find that Floyd Sandy was entitled to summary judgment on this issue. The Hursts failed to present any evidence which raises any genuine issue of material fact as to whether Floyd Sandy made a false representation of his registration and licensure in this state.

## IV. Arbitration Agreement

The Hursts allege the trial court erred in finding the suit was barred by the arbitration agreement contained in the construction contract. Specifically, the Hursts allege this dispute regarding the design issues arises from a separate contract which they never agreed to arbitrate.

"Contracts, where there is no ambiguity, must be construed according to the terms which the parties have used, to be taken and understood in their plain, ordinary and popular sense." *Inman v. Life Ins. Co. of Virginia*, 223 S.C. 98, 101, 74 S.E.2d 423, 424 (1953).

It is the contention of Floyd Sandy that the instant suit clearly involves disagreements arising out of the construction contract which contains an arbitration clause. Thus, he ar-

---

7. His affidavit is careful to state "It is my impression, and I certainly believed, that Mr. Floyd Sandy was a licensed engineer who was allowed to do business in South Carolina."

gues the Hursts, in signing the contract, have agreed to arbitrate all disagreements.

The trial court ruled the Hursts' "remedy if any, must be obtained by arbitration" and cited *Osteen v. T.E. Cuttino Constr. Co.* 315 S.C. 422, 434 S.E.2d 281 (1993). In *Osteen*, our court held that an arbitration clause contained in an ambiguous construction contract was enforceable since the parties to the contract did not intend that state arbitration law would supersede federal arbitration law. *Id.* at 426–28, 434 S.E.2d at 284. The Court further concluded that federal arbitration law must be applied to contracts which involve interstate commerce, regardless of the intent of the parties. *Id.* at 424–26, 434 S.E.2d at 283.

We think, here, the evidence shows the contract is unambiguous. The arbitration clause provides that "any disagreement arising out of this contract or the application of any provisions thereof shall be submitted to an arbitrator." We find, as a matter of law, that the construction contract was separate [8] from the oral contract to prepare the plans. Moreover, the parties to the contracts are different. The construction contract is between the Hursts and SCC, while the oral contract is between the Hursts and William Sandy. The Hursts' position is partly borne out by the fact that after a controversy developed between them and SCC regarding monies owed and defects in the construction, the Hursts and SCC entered into a written agreement to arbitrate those matters. That agreement does not mention design defects and neither Floyd Sandy nor William Sandy was made a party to the agreement. Additionally, the arbitration clause in the construction contract violates S.C.Code Ann. § 15–48–10 (1978) in that the contract makes no reference to arbitration on its face. Finally, the oral agreement is not subject to the Federal Arbitration Act, 9 U.S.C.A. § 2 (1991) because the design contract in no way involves commerce. *Garikes, Wilson v. Episcopal Foundation,* 614 So.2d 447 (Ala.1993) (contract between Alabama architectural firm and Alabama property owner did not involve commerce and was not subject to Federal Arbitration Act). We agree with the Hursts that the arbitration award does not bar this action.

---

**8.** As best we can tell, the oral contract was entered into approximately one year prior to the construction contract.

## V. South Carolina Unfair Trade Practices Act, Res Judicata, Collateral Estoppel

In additional arguments, the Hursts contend the trial court erred in dismissing the case because neither South Carolina Unfair Trade Practices Act, res judicata, nor collateral estoppel provided defenses for Floyd Sandy.

We need not address these remaining issues because they are not properly before this court. Our review of the orders appealed indicates the trial court did not rule on the application of these defenses. *Townsend v. City of Dillon,* 326 S.C. 244, 486 S.E.2d 95 (1997); *Cook v. South Carolina Dep't of Highways and Pub. Transp.,* 309 S.C. 179, 420 S.E.2d 847 (1992).

## CONCLUSION

To summarize, we conclude the trial court properly granted summary judgment as to the claims of negligence per se and fraud. However, we find the trial court erred in granting summary judgment as to the claims of negligence and negligent misrepresentation.

AFFIRMED IN PART, REVERSED IN PART AND REMANDED.

CONNOR and STILWELL, JJ., concur.